2022-1226

IN THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

ROYAL BRUSH MANUFACTURING, INC.,

Plaintiff-Appellant,

v.

UNITED STATES, DIXON TICONDEROGA COMPANY,

Defendants-Appellees.

Appeal from the United States Court of International Trade
in case no. 19-CV-00198, Chief Judge Mark A. Barnett

**BRIEF OF DEFENDANT-APPELLEE UNITED STATES**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Assistant Director

ANTONIA R. SOARES
Senior Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
antonia.soares@usdoj.gov

June 9, 2022

Attorneys for Defendant-Appellee
United States

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES .......... i

STATEMENT OF THE ISSUES .......... 1

STATEMENT OF THE CASE .......... 2

STATEMENT OF FACTS .......... 3

I. The Relevant Legal Framework .......... 3

A. The EAPA Statute Governing Evasion Of Antidumping And Countervailing Duty Orders .......... 3

B. The Relevant Regulations .......... 6

1. 19 C.F.R. § 165.4 Governing Confidential Information .......... 6

2. 19 C.F.R. § 165.23(c)(1) And 19 C.F.R. § 165.23(c)(2) Governing Placing Factual Information On The Record .......... 6

3. 19 C.F.R. § 165.25 Governing Verifications Of Information .......... 7

II. CBP's Initiation Of The EAPA Investigation Concerning Allegations Of Royal Brush's Transshipment Of Covered Merchandise Through A Philippines Supplier .......... 8

III. The CBP Attaché's Site Visit To The Philippine Shipper's Facility To Gather Evidence .......... 9

IV. CBP Imposes Interim Measures Under The EAPA Statute After Determining That There Was A Reasonable Suspicion That Royal Brush Was Engaging In Evasion .......... 10

V. The 19 C.F.R. § 165.23(c)(2) Deadline For Submissions Of Factual Information Expires .......... 10

VI. CBP's 2018 On-Site Verification At The Philippine Shipper's Facility And The Philippine Shipper's Failure To Cooperate ....................................11

VII. CBP's 2019 Verification Report....................................................................12

VIII. Royal Brush's Submission Related To The Verification Report And CBP's Rejection Of That Submission ...........................................................13

IX. CBP Issues An Affirmative Determination Of Evasion...............................14

X. Administrative Review Of The Evasion Determination ...............................16

XI. Royal Brush 's Challenge To CBP's Evasion Determination In The Trial Court ...........................................................................................................17

XII. The Trial Court's December 2020 Remand Opinion And Order..................18

XIII. CBP's Remand Redetermination And Royal Brush's Challenges Before The Trial Court .................................................................................18

XIV. The Trial Court's October 2021 Opinion And Order Sustaining CBP's Remand Redetermination ............................................................................20

SUMMARY OF THE ARGUMENT ......................................................................24

ARGUMENT...........................................................................................................26

I. Standard Of Review.........................................................................................26

II. The Trial Court Correctly Concluded That CBP's Compliance With Its Regulation Did Not Deprive Royal Brush Of Due Process .....................27

A. Legal Standard Governing Procedural Due Process ...........................28

B. The Trial Court Correctly Concluded That CBP Afforded Royal Brush With Due Process By Providing It With Public Summaries Of Confidential Information Pursuant To CBP's Regulation............29

C. The Trial Court Correctly Concluded That Due Process Does Not Require An Administrative Protective Order Procedure ....................31

D. Royal Brush Fails To Establish That The Trial Court Erred ..............32

III. CBP's Rejection Of Royal Brush's March 2019 Submission Was Lawful ....................42

A. The Trial Court Correctly Concluded That CBP Properly Rejected Royal Brush's Submission Pursuant To Its Regulation .......43

B. Royal Brush Fails To Establish Trial Court Error ..............................46

III. The Trial Court Correctly Concluded That CBP's Evasion Determination Was Reasonable And In Accordance With Law ...................54

A. The Trial Court Correctly Concluded That CBP's Evasion Determination Was Supported By Substantial Evidence....................55

B. Royal Brush Fails To Show That The Trial Court Erred....................56

CONCLUSION ....................63

# TABLE OF AUTHORITIES

**Cases** .......... **Page(s)**

*Altx, Inc. v. United States*,
370 F.3d 1108 (Fed. Cir. 2004) .......... 60

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) .......... 32

*American-Arab Anti-Discrimination Comm. v. Reno*,
70 F.3d 1045 (9th Cir. 1995) .......... 38, 39

*Apple Inc. v. Voip-Pal.com, Inc.*,
976 F.3d 1316 (Fed. Cir. 2020) .......... 39, 62

*Atar S.r.l. v. United States*,
730 F.3d 1320 (Fed. Cir. 2013) .......... 30

*Avesta AB v. United States*,
689 F. Supp. 1173 (Ct. Int'l Trade 1988) .......... 43

*Bowe–Passat v. United States,*
17 C.I.T. 335 (1993) .......... 53

*Bowman Transportation, Inc. v. Arkansas-Best Freight Sys.*,
419 U.S. 281 (1974) .......... 40

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
467 U.S. 837 (1984) .......... 49

*Consol. Bearings Co. v. United States*,
412 F.3d 1266 (Fed. Cir. 2005) .......... 30

*Consolo v. Fed. Mar. Comm'n*,
383 U.S. 607 (1966) .......... 31

*Cook v. United States*,
536 F.2d 365 (Ct. Cl. 1976) .......... 44

*Creswell Trading Co. v. United States*,
15 F.3d 1054 (Fed. Cir. 1994)......62

*Diamond Tools Tech. LLC v. United States*,
545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021)......32, 35, 45

*Doty v. United States*,
53 F.3d 1244 (Fed. Cir. 1995)......41

*Essar Steel Ltd. v. United States*,
678 F.3d 1268 (Fed. Cir. 2012)......52

*Flyers Rights Education Fund, Inc. v. Federal Aviation Administration*,
864 F.3d 738 (D.C. Cir. 2017)......41

*Ford Motor Co. v. United States*,
809 F.3d 1320 (Fed. Cir. 2016)......49

*Former Emps. of Apache Corp. v. United States*,
850 F. Supp. 24 (Ct. Int'l Trade 1994)......46

*FPC v. Transcon. Gas Pipe Line Corp.*,
423 U.S. 326 (1976)......52

*Gen. Dynamics Ordnance and Tactical Sys., Inc.*,
ASBCA Nos. 56870, 56957, 56957, 2010 WL 3119469 (June 1, 2010)......45

*I.N.S. v. Elias-Zacarias*,
502 U.S. 478 (1992)......61

*In re Kumar*,
418 F.3d 1361 (Fed. Cir. 2005)......58

*Int'l Custom Products, Inc. v. United States*,
791 F.3d 1329 (Fed. Cir. 2015)......32

*Kemira Fibres Oy v. United States*,
858 F. Supp. 229 (Ct. Int'l Trade 1994)......42

*LaChance v. Erickson*,
522 U.S. 262, (1998) ........................................................................................ 33

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013) ........................................................................................ 51

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ........................................................................................ *passim*

*Miami Free Zone Corp. v. Foreign-Trade Zones Bd.*,
136 F.3d 1310 (Fed. Cir. 1998) ........................................................................ 32

*Micron Tech., Inc. v. United States*,
117 F.3d 1386 (Fed. Cir. 1997) ........................................................................ 55

*Mitchell v. W.T. Grant Co.*,
416 U.S. 600 (1974) ........................................................................................ 44

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......................................................................................... 25, 62

*Nail Corp. v. United States*,
949 F. Supp. 2d 1247 (Ct. Int'l Trade 2013) .................................................... 55

*Navneet Publications (India) Ltd. v. United States*,
32 C.I.T. 169 (2008) ........................................................................................ 53

*NEC Corp. v. United States*,
151 F.3d 1361 (Fed. Cir. 1998) ........................................................................ 33

*Nereida Trading Co., Inc. v. United States*,
683 F. Supp. 2d 1348 (Ct. Int'l Trade 2008) .................................................... 33

*Ningbo Dafa Chem. Fiber Co. v. United States*,
580 F.3d 1247 (Fed. Cir. 2009) ........................................................................ 30, 31

*Nucor Corp. v. United States*,
675 F. Supp. 2d 1340 (Ct. Int'l Trade 2010) .................................................... 60

*Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio*,
301 U.S. 292 (1937) .......... 42

*PSC VSMPO-Avisma Corp. v. United States*,
688 F.3d 751 (Fed. Cir. 2012) .......... *passim*

*Qingdao Sea-Line Trading Co. v. United States*,
766 F.3d 1378 (Fed. Cir. 2014) .......... 31

*R & W Flammann GmbH v. United States*,
339 F.3d 1320 (Fed. Cir. 2003) .......... 39

*Ralls Corporation v. Committee on Foreign Investment*
*758 F.3d 296 (D.C. Cir. 2014)* .......... *38*

*Ramirez v. Department of Homeland Security*,
975 F.3d 1342 (Fed. Cir. 2020) .......... 42

*Rodriguez v. Department of Veterans Affairs*,
8 F.4th 1290 (Fed. Cir. 2021) .......... 64, 65

*Royal Brush Manufacturing, Inc. v. United States*,
483 F. Supp. 3d 1294 (Ct. Int'l Trade 2020) .......... *passim*

*Royal Brush Manufacturing, Inc. v. United States*,
545 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) .......... *passim*

*Roytberg v. United States*,
No. 15-cv-5560, 2016 WL 1559151 (E.D.N.Y. Apr. 18, 2016) .......... 42

*Sichuan Changhong Elec. Co. v. United States*,
466 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) .......... 36, 53

*United States v. Eurodif S.A.*,
555 U.S. 305 (2009) .......... 30

*Zinermon v. Burch*,
494 U.S. 113 (1990) .......... 32

**Statutes**

18 U.S.C. § 1905 ........................................................................ 34, 36, 39

19 U.S.C. § 1517 ........................................................................ 2, 3, 4

19 U.S.C. § 1517(b) ........................................................................ 4, 5

19 U.S.C. § 1517(c) ........................................................................ *passim*

19 U.S.C. § 1517(e) ........................................................................ 5

19 U.S.C. § 1517(f) ........................................................................ *passim*

19 U.S.C. § 1517(g)(1) ........................................................................ 30, 60, 61

28 U.S.C. § 1295(a)(5) ........................................................................ 1

38 U.S.C. § 714 ........................................................................ 64, 65

38 U.S.C. § 714(d)(2)(A) ........................................................................ 65

Pub. L. No. 114-125 ........................................................................ 4

**Regulations**

19 C.F.R. § 165.4(a) ........................................................................ *passim*

19 C.F.R. § 165.23(c) ........................................................................ *passim*

19 C.F.R. § 165.25 ........................................................................ *passim*

**Other Authorities**

*Certain Cased Pencils From the People's Republic of China*,
59 Fed. Reg. 46,909 (Dep't Commerce Dec. 28, 1994) ........................................ 8

*Certain Cased Pencils From the People's Republic of China*,
82 Fed. Reg. 41,608 (Dep't Commerce Sept. 1, 2017) ........................................ 8

## STATEMENT OF RELATED CASES

Pursuant to Rules 28(a)(4) and 47.5 of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for defendant-appellee, the United States, states that she is unaware of any other appeal in or from this action that previously was before this Court or any other appellate court under the same or similar title. Defendant-appellee's counsel further states that she is unaware of any cases currently pending before this Court that may be affected by the Court's decision in this case.

2022-1226

IN THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

ROYAL BRUSH MANUFACTURING, INC.,

Plaintiff-Appellant,

v.

UNITED STATES, DIXON TICONDEROGA COMPANY,

Defendants-Appellees.

Appeal from the United States Court of International Trade
in case no. 19-CV-00198, Chief Judge Mark A. Barnett.

## STATEMENT OF THE ISSUES[1]

1. Whether the trial court lawfully concluded that U.S. Customs and Border Protection (CBP or Customs) did not deprive Royal Brush of due process by withholding access to confidential business information during the investigation

[1] Pursuant to Rule 28(b) of the Federal Rules of Appellate Procedure, we provide a separate statement of issues, statement of the case, statement of facts, and standard of review because we disagree with those offered by plaintiff-appellant.

pursuant to the Enforce and Protect Act (EAPA), 19 U.S.C. § 1517, when 19 C.F.R. § 165.4(a) requires the agency to place only public summaries of confidential business information on the record.

2. Whether the trial court lawfully concluded that CBP did not violate 19 C.F.R. § 165.23(c)(1) or deprive Royal Brush of due process by rejecting its March 12, 2019 rebuttal submission when 19 C.F.R. § 165.23(c)(1) permits rebuttal submissions only when CBP places "new factual information" on the record, which did not happen here.

3. Whether the trial court lawfully concluded that substantial evidence supported CBP's determination that Royal Brush engaged in evasion in violation of EAPA.

## STATEMENT OF THE CASE

This appeal concerns CBP's affirmative determination of evasion of the antidumping duty order on certain cased pencils from the People's Republic of China issued pursuant to CBP's authority under EAPA, 19 U.S.C. § 1517. CBP issued two relevant determinations: (1) Notice of Final Determination as to Evasion, EAPA Case No. 7238 (May 6, 2019) (Appx0000090-000107); and (2) Decision on Request for Administrative Review, EAPA Case No. 7238 (Sept. 24,

2019) (Appx000071-000089).[2]

Following a remand (*see Royal Brush Manufacturing, Inc. v. United States*, 483 F. Supp. 3d 1294 (Ct. Int'l Trade 2020) (*Royal Brush I*)), the trial court entered judgment sustaining the CBP's remand redetermination. *See Royal Brush Mfg., Inc. v. United States*, 545 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) (*Royal Brush II*). Royal Brush appeals the trial court's judgment, contending that the trial court erred (1) in concluding that CBP did not deprive Royal Brush of due process by withholding access to confidential business information during the EAPA investigation; (2) in concluding that CBP did not violate 19 C.F.R. § 165.23(c)(1) or deprive Royal Brush of due process when rejecting its submission of information in response to CBP's Verification Report; and (3) in concluding that substantial evidence supported CBP's determination that Royal Brush engaged in evasion in violation of EAPA.

## STATEMENT OF FACTS

### I. The Relevant Legal Framework

#### A. The EAPA Statute Governing Evasion Of Antidumping And Countervailing Duty Orders

In 2016, the President signed into law the Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat. 122 (2016).

[2] "Appx__" refers to a page of the parties' joint appendix.

Title IV, Section 421 of TFTEA, commonly referred to as the "Enforce and Protect Act" or "EAPA" and codified at 19 U.S.C. § 1517, established a new CBP administrative procedure for investigating allegations of evasion of antidumping (AD) and countervailing duty (CVD) orders as part of Congress's efforts to ensure a level playing field for U.S. industry. *See* H.R. Rep. No. 114-114, at 85 (2015).

Under EAPA, Federal agencies or interested parties may submit allegations to CBP that merchandise covered by an AD or CVD order has entered the United States through evasion. If the allegations reasonably suggest that evasion is occurring, the statute mandates a formal investigation process and statutorily-mandated investigation timeline. 19 U.S.C. § 1517(b). CBP's regulations established additional deadlines and procedures governing the investigation, which facilitate CBP's compliance with its statutorily-required deadlines. 19 C.F.R. § Part 165.

Pursuant to EAPA, within 15 calendar days of receiving an allegation, if CBP determines that the allegation reasonably suggests covered merchandise has been entered through evasion, CBP must initiate an investigation. 19 U.S.C. § 1517(b)(1). Within 90 calendar days, CBP must make an initial determination of reasonable suspicion of evasion and issue interim measures, which includes the suspension and extension of certain liquidated entries. *Id.* § 1517(e). The EAPA statute grants CBP broad discretion to determine the scope and means of the

investigation, including authority to collect and verify any information it deems necessary to make its evasion determination. *Id.* § 1517(c)(2).

During the investigation, CBP maintains an administrative record of material obtained and considered by CBP during the investigation and properly filed information. *Id.* § 1517(c)(2); 19 C.F.R. § 165.21. No later than 300 calendar days after the initiation of the investigation, CBP is required to "make a determination, based on substantial evidence," as to whether an AD or CVD order has been evaded.[3] 19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22.

When the party alleged to have engaged in evasion, or the party that is the foreign producer or exporter of the covered merchandise, "fail{s} to cooperate by not acting to the best of the party's ability to comply with a request for information," CBP may "use an inference that is adverse to the interests of" that party when "selecting from among the facts otherwise available." 19 U.S.C. § 1517(c)(3)(A).

Interested parties are permitted to request a review of an initial determination, and CBP must complete the review and issue a final administrative determination no later than 60 business days after such a request. *Id.* § 1517(f).

---

[3] CBP may issue a notice of an extension of time of 60 days, provided certain requirements are met, to render its determination. 19 U.S.C. § 1517(c)(1)(B).

Judicial review of CBP's final administrative determination and the original determination as to evasion is available in the Court of International Trade. *Id.* § 1517(g)(1).

### B. The Relevant Regulations

Three of the regulations promulgated by CBP under EAPA are relevant here.

#### 1. 19 C.F.R. § 165.4 Governing Confidential Information

First, under 19 C.F.R. § 165.4, and with certain exceptions, interested parties submitting information to CBP may request that the agency treat any part of their submission as business confidential. CBP will then grant confidential treatment if the information over which the confidential treatment is sought consists of trade secrets and commercial or financial information obtained from any person. 19 C.F.R. § 165.4(a). Parties must meet the regulatory requirements, such as providing an explanation as to why such information is entitled to confidentiality, when seeking protection from disclosure. *Id.*

#### 2. 19 C.F.R. § 165.23(c)(1) And 19 C.F.R. § 165.23(c)(2) Governing Placing Factual Information On The Record

CBP's regulations set forth the requirements for the submission of factual information by parties.

Pursuant to 19 C.F.R. § 165.23(c)(2), parties to the investigation may voluntarily submit information to CBP or may provide information in response to requests by CBP. 19 C.F.R. § 165.23(c)(2). Parties to the investigation have 200

days from the date of the initiation of the investigation to submit factual information on the record. *Id.* Interested parties who are not parties to the investigation may also provide information in response to requests by CBP. *Id.*

Pursuant to 19 C.F.R. § 165.23(c)(1), on or after the 200th calendar day after the initiation of the investigation, parties are permitted to submit rebuttal information when CBP places "new factual information" on the record. The regulation provides, in pertinent part:

> If CBP places new factual information on the administrative record on or after the 200th calendar day after the initiation of the investigation (or if such information is placed on the record at CBP's request), the parties to the investigation will have ten calendar days to provide rebuttal information to the new factual information.

19 C.F.R. § 165.23(c)(1).

### 3. **<u>19 C.F.R. § 165.25 Governing Verifications Of Information</u>**

Pursuant to 19 C.F.R. § 165.25, prior to making an evasion determination, "CBP may in its discretion verify information in the United States or foreign countries collected under § 165.23 as is necessary to make its determination." 19 C.F.R. § 165.25(a). The regulation further provides that "CBP will place any relevant information on the administrative record and provide a public summary." 19 C.F.R. § 165.25(b).

## II. CBP's Initiation Of The EAPA Investigation Concerning Allegations Of Royal Brush's Transshipment Of Covered Merchandise Through A Philippines Supplier

On February 27, 2018, Dixon Ticonderoga Company (Dixon), a domestic producer of pencils, lodged an allegation with CBP in which it averred that Royal Brush, a U.S. importer, was transshipping pencils made in China — and subject to an antidumping duty order on certain cased pencils from China — through the Philippines by a Philippines Shipper.[4] Appx000108-000154; *see also Certain Cased Pencils from the People's Republic of China*, 59 Fed. Reg. 66,909 (Dep't Commerce Dec. 28, 1994) (antidumping duty order) (*Pencils Order*); *Certain Cased Pencils From the People's Republic of China*, 82 Fed. Reg. 41,608 (Dep't Commerce Sept. 1, 2017) (continuation of antidumping duty order).

Specifically, Dixon alleged that a Chinese manufacturer had entered into an agreement with a Chinese trading company to have fully manufactured pencils of Chinese origin marked as "Made in Philippines" and shipped to the Philippines Shipper's facility in the Philippines. Appx000110-000111. Dixon also alleged that the pencils may have undergone additional repacking in the Philippines, and that Royal Brush then imported the pencils from the Philippines into the United

[4] Before the trial court, the parties treated the name of the Philippines Shipper as confidential, and we agree with the trial court that the name is immaterial to the outcome of this case. *Royal Brush I*, 483 F. Supp. 3d at 1298 n.5. Accordingly, we refer to the company as "the Philippines Shipper."

States as though they were of Philippine origin. Appx000111. Dixon attached documents in support of the allegation. Appx000113-000144.

On March 27, 2018, CBP's Trade Remedy Law Enforcement Directorate (TRLED), Office of Trade, initiated an EAPA investigation to determine whether certain pencils had been entered into the United States by means of evasion. Appx000155-000157. CBP issued a Form 28 Request for Information (CF 28) to Royal Brush, requesting general information; information about its corporate structure and affiliations; information relating to its accounting and financial practices; and purchase and sales documents. Appx000092. In response, Royal Brush provided written responses and documents. Appx001376-001409.

## III. The CBP Attaché's Site Visit To The Philippines Shipper's Facility To Gather Evidence

On June 6, 2018, a CBP Attaché conducted an unannounced initial site visit to the Philippines Shipper's facility to "gather evidence to confirm whether {the Philippines Shipper} is manufacturing cased pencils" at the Philippine facility. Appx000161-000176. During the visit, the Attaché did not observe any manufacturing of pencils or the presence of raw materials sufficient to manufacture pencils. Appx000162. The Attaché observed that the manufacturing warehouse "looked like the staging area for the pictures sent to {the} Office of Trade," and that dust and cobwebs were visible on the machinery. *Id.* The Attaché also observed what appeared to be repacking of finished pencils from China; staff were

opening boxes full of pencils that had Chinese writing on the outside and repacking the pencils into different boxes labeled “Made in the Philippines.” Appx000161, Appx000162.

## IV. CBP Imposes Interim Measures Under The EAPA Statute After Determining That There Was A Reasonable Suspicion That Royal Brush Was Engaging In Evasion

On June 26, 2018, CBP issued a notice of initiation of investigation, notifying Royal Brush and Dixon of CBP’s decision to impose interim measures pursuant to 19 C.F.R. § 165.24(b) based on a reasonable suspicion that Royal Brush was evading the antidumping duty order covering cased pencils by importing pencils manufactured in China and falsely marking the pencils as being of Philippines origin. *See* Appx000795-000800. CBP explained that evidence gathered during the Attaché site visit, documents provided by Royal Brush in its response to CBP’s CF 28, and documents submitted by Dixon in support of its allegation “collectively create{d} a reasonable suspicion as to evasion.” Appx000800.

## V. The 19 C.F.R. § 165.23(c)(2) Deadline For Submissions Of Factual Information Expires

After imposing interim measures, CBP sent multiple requests for information to Royal Brush and the Philippines Shipper. Appx000093. Both parties submitted responses in October 2018. Appx000807-000836, Appx000867-001018. Because CBP initiated the investigation on March 27, 2018, the 200-day

deadline to submit factual information expired on October 13, 2018. *See* 19 C.F.R. § 165.23(c)(2).

## VI. CBP's 2018 On-Site Verification At The Philippines Shipper's Facility And The Philippines Shipper's Failure To Cooperate

Pursuant to 19 C.F.R. § 165.25(a), between November 14 and November 17, 2018, CBP conducted an on-site verification at the Philippines Shipper's facility to "verif{y} the responses placed on the record of the proceeding." Appx001195. During the on-site verification, CBP toured the facility, interviewed company officials, and reviewed relevant company records. Appx001195.

In advance of the on-site verification, CBP sent the Philippines Shipper an engagement letter, explaining the details of the on-site verification. Appx001435-001442. In the letter, CBI explained that the Philippines Shipper should "be prepared to walk through {its} production process in detail" using five identified invoices. Appx001437. CBP also identified a list of documents that could be used to verify the documents that the Philippines Shipper had submitted on the administrative record, and that it would be required to submit within five business days after the site visit. Appx001437-001438. CBP explained that, if the Philippines Shipper "fail{ed} to cooperate and comply to the best of its ability with the verification, CBP may apply an adverse inference and select from among the facts otherwise available to make the determination as to evasion pursuant to 19 C.F.R. § 165.27." Appx001436.

CBP provided the Philippines Shipper an extension to submit the requested documents. Appx001443. Despite the extension, and without explanation, the Philippines Shipper failed to produce many of the requested documents. Appx001198-001203.

## VII. CBP's 2019 Verification Report

Pursuant to 19 C.F.R. § 165.25(b), CBP placed on the record its February 11, 2019 Verification Report, which it prepared to "document{ } factual information obtained by the EAPA team during {the} foreign on-site verification{ }." Appx001194-001237. CBP also attached to the Verification Report 32 photographs taken inside the Philippines Shipper's facility. Appx001206-001237. In the report, CBP explained that it sought to verify the Philippines Shipper's "capability to produce pencils by validating information provided in {its} {request for information} response." Appx001201.

CBP encountered difficulties verifying the identified invoices as a result of the Philippines Shipper's failure to provide requested documents, deletion of documents, or provision of documents that had been altered or redacted. Appx001199-001201. CBP also found that the Philippines Shipper's payroll records indicated that the company's production capacity was far less than the amount claimed and, thus, that the Philippines Shipper's amount of exports to the United States substantially exceeded its production capacity as calculated by

CBP's verification team. Appx001201-001202. Evidence obtained during the verification also indicated that the Philippines Shipper's previously-submitted payroll documents "were unsupported." Appx001202.

## VIII. Royal Brush's March 12, 2019 Submission Related To The Verification Report And CBP's Rejection Of That Submission

On March 6, 2019, in response to an inquiry by Royal Brush, CBP informed Royal Brush that, because the Verification Report contained "new information," Royal Brush was entitled to submit rebuttal information "related specifically to the information that was provided in the verification report." Appx000206-000207. On March 12, 2019, Royal Brush filed its submission. Appx000208. On March 19, 2019, however, CBP informed Royal Brush that it was rejecting the submission, in part, because of the inclusion of new factual information that was "not furnished during the verification of the RFI documents." Appx000213.

On March 21, 2019, CBP explained that, upon further review, it had previously misinterpreted its regulation, 19 C.F.R. § 165.23(c), and now determined that, because "the verification report does not contain new information," Royal Brush's "rebuttal to the verification report {was} not warranted." Appx000208. On March 25, 2019, Royal Brush submitted written arguments pursuant to 19 C.F.R. § 165.26. Appx001281-001282, Appx001284-001328.

## IX. CBP Issues An Affirmative Determination Of Evasion

On May 6, 2019, CBP issued an affirmative determination of evasion finding that Royal Brush's imports of pencils were entered into the United States through evasion. Appx000090-000098. Specifically, CBP found that record evidence supported a finding that Royal Brush was importing merchandise subject to the antidumping duty order on pencils from China, rather than non-subject merchandise from the Philippines as declared by Royal Brush on entry documentation. Appx000090. CBP also found that Royal Brush's response to CBP's requests for information "contained internal contradictions that call{ed} into question whether the pencil shipments were actually manufactured in the Philippines" (Appx000092); the Attaché's findings at the unannounced site visit bolstered the evasion allegation (Appx000095); and the supporting documentation reviewed at verification further supported this finding, *id.* CBP also found that, in its response to the CF 28, Royal Brush had provided two certifications from a third-party certification service that indicated the pencils were of Chinese origin. Appx000093, Appx000095 (citing Appx001390).

CBP further explained that its "ability to determine the extent to which the Philippines Shipper transshipped pencils from China was hindered by the Philippines Shipper's failure to cooperate and comply to the best of its ability{.}" Appx000095. CBP explained, at length, the extent to which its investigation was

hindered because of the Philippines Shipper's failure to cooperate. Appx000095-000097. For example, CBP explained that the Philippines Shipper "failed to provide substantial amounts of information requested by CBP at verification, such as inventory bank records, payroll records, receipt records, export declarations, and invoices between {the} Philippines Shipper and suppliers." Appx000095; *see also* Appx000095-000097. Where the Philippines Shipper did provide requested information, it was often redacted or altered. Appx000096.

Based on the Philippines Shipper's "refusal to provide substantial amounts of information that were requested by CBP, including those relating to the purchasing, inventorying, and production of pencils," CBP determined that the "Philippines Shipper failed to cooperate and comply to the best of its ability." Appx000097. Accordingly, pursuant to 19 C.F.R. § 165.6(a), CBP applied an adverse inference, inferring that "a) that Philippines Shipper's production records did not support its contention that the pencils that it shipped to Royal Brush were manufactured by {the} Philippines Shipper; and b) that such pencils were manufactured in China, given {the} Philippines Shipper's involvement with Chinese suppliers, including even the purchasing and repacking of pencils identified as manufactured in China." *Id.*; *see also* Appx000095.

CBP concluded that "the record evidence, and the absence of information due to {the} Philippines Shipper's failure to cooperate and comply to the best of its

ability, support a conclusion that pencils shipped by {the} Philippines Shipper to the United States and imported by Royal Brush, were manufactured in China rather than in the Philippines." Appx000097.

## X. <u>Administrative Review Of The Evasion Determination</u>

On June 18, 2019, Royal Brush requested that CBP's Office of Regulations and Rulings (R&R) conduct an administrative review of its evasion determination pursuant to 19 U.S.C. § 1517(f). Appx000071-0000089. In September 2019, CBP issued its final administrative determination, concluding that there was substantial evidence to support a finding that the pencils imported by Royal Brush during the period of investigation were manufactured in China — not the Philippines. Appx000081-0000089. CBP explained that, in response to its requests for information, Royal Brush had provided quality compliance certifications that listed China as the country of origin for the tested pencils. Appx000082. CBP also summarized the Attaché's findings indicating the absence of production activity by the Philippines Shipper and the repackaging of pencils made in China into boxes labeled "Made in Philippines" for export to the United States. Appx000083; *see also* Appx000084 (discussing the Attaché Report).

CBP explained that verification was conducted in order "to determine whether the Philippine {Shipper} could show that it was capable of producing the amount of pencils allegedly manufactured for Royal Brush, as well as to clarify the

country of origin for pencils imported by Royal Brush." Appx000084. CBP relied on the inability of the Philippines Shipper to satisfactorily account for the production of the pencils associated with the seven Royal Brush invoices and the verification team's findings regarding overall production capacity. Appx000085, Appx000087. CBP concluded that "{t}he production in the Philippines for Royal Brush's imports remains unsubstantiated, as amply demonstrated in the verification report by trained CBP auditors." Appx000086.

Further, while not necessary to its decision, CBP concluded that "adverse inferences were warranted, inasmuch as the importer, as well as the alleged foreign producer and exporter, *failed* to provide sufficient evidence to demonstrate that the pencils imported by Royal Brush were manufactured in the Philippines." Appx000088 (emphasis in the original).

## XI. Royal Brush 's Challenge To CBP's Evasion Determination In The Trial Court

In November 2019, Royal Brush commenced an action in the trial court, challenging several aspects of CBP's evasion determination. Appx001535. Specifically, Royal Brush contended that (1) CBP improperly rejected Royal Brush's filing seeking to rebut purportedly new factual information contained in CBP's Verification Report; (2) CBP denied Royal Brush procedural due process and redacted material evidence in an arbitrary and capricious manner; (3) CBP's use of an adverse inference constituted an abuse of discretion and was arbitrary and

capricious; and (4) CBP drew irrational conclusions from the evidence. *Royal Brush I*, 483 F. Supp. 3d at 1297.

## XII. The Trial Court's December 2020 Remand Opinion And Order

On December 1, 2020, the trial court remanded the matter, instructing CBP to (1) reconsider and further explain the existence of new factual information in the Verification Report and, to the extent the Verification Report contains new factual information, afford Royal Brush an opportunity to rebut that information; and (2) comply with the public summary requirement set forth in 19 C.F.R. § 165.4 and afford Royal Brush an opportunity to present arguments based on that information. *Royal Brush I*, 483 F. Supp. 3d at 1303-08. The trial court deferred ruling on two issues related to the Philippines Shipper's production capacity and CBP's application of adverse inferences. *Id.* at 1297, 1307 n.21, 1308.

In remanding the matter, the trial court stated, "{t}o be clear, the court does not hold that Royal Brush is entitled to receive business confidential information{ }" because "Congress has not mandated that Royal Brush be afforded such access and Royal Brush has not shown that due process requires it." *Id.* at 1308.

## XIII. CBP's Remand Redetermination And Royal Brush's Challenges Before The Trial Court

On March 22, 2021, CBP issued its remand redetermination. Appx000016-0000055. On remand, CBP complied with the trial court's order by requiring all

interested parties to submit public summaries of confidential business information in compliance with 19 C.F.R. § 165.4(a)(2). Appx000030. CBP also prepared new public versions of business confidential documents that it had previously placed on the administrative record, and permitted interested parties to submit rebuttal information and written arguments on the updated public versions of business confidential information. *Id.*

Upon reconsideration of the Verification Report, CBP determined that the report did not contain "new factual information" and, thus, CBP properly rejected Royal Brush's submission of rebuttal information pursuant to 19 C.F.R. § 165.23(c)(1). Appx000019-000029. CBP explained that the Verification Report included information used to verify information that had previously been placed on the record. Appx000022. CBP further explained why each type of information in the Verification Report was used as a means for verification of information provided during the investigation. Appx000022-000025.

Related to the public summaries of the confidential business information, CBP provided an extensive explanation as to how it complied with the remand order. *See* Appx000029-000042, Appx000044-000049. In particular, CBP explained that it complied with its regulations by requiring interested parties to place revised public versions on the record, allowing parties to submit information they would have submitted if they had access to the public summaries during the

original investigation, and permitting parties to submit written arguments based on the public summaries. *Id.*

In the trial court, Royal Brush challenged CBP's remand redetermination. Specifically, Royal Brush contended that the public summaries of confidential business information were inadequate, and that CBP's unwillingness to reveal confidential business information to Royal Brush during the investigation violated its due process rights; that CBP improperly rejected its rebuttal submission related to the Verification Report; and that CBP's remand redetermination were arbitrary and capricious. *Royal Brush II*, 545 F. Supp. 3d at 1365, 1369, 1371-72.

## XIV. The Trial Court's October 2021 Opinion And Order Sustaining CBP's Remand Redetermination

In October 2021, the trial court sustained CBP's remand redetermination in all respects and concluded that its evasion determination was supported by substantial evidence. *Royal Brush II*, 545 F. Supp. 3d at 1364-73. The trial court rejected Royal Brush's arguments that the revised public summaries deprived Royal Brush of due process, and that due process requires that CBP provide Royal Brush with the confidential business information that the agency relied on during the investigation. *Id.* at 1364-69.

To determine whether the administrative procedures provided by CBP were "constitutionally sufficient," the trial court relied on the three factors set forth in the Supreme Court's decision in *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 1365 (quoting *Mathews*, 424 U.S. at 333). Observing that "Royal Brush does not frame its argument in terms of the *Mathews* balancing test and makes no argument as to the first and third factors{,}"and that "Royal Brush raises arguments only on the second factor," the trial court focused on Royal Brush's "asserti{on} that CBP violated its due process rights by relying on 'secret' information to reach its decision." *Id.* at 1365-66. The trial court concluded that "CBP has shared information with Royal Brush consistent with its regulation and in a manner that balances the need to disclose evidence against an importer with the need to protect certain information from unauthorized disclosure." *Id.* at 1367.

As for Royal Brush's challenges to the adequacy of the public summaries and its insistence on actual figures, the trial court concluded that "Royal Brush has not demonstrated that due process requires such access{;}" due process "requires notice and a meaningful opportunity to be heard, which were provided here in the form of public summaries and comment procedures." *Id.* at 1368 (citing *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761-62 (Fed. Cir. 2012)).

Accordingly, the trial court found that CBP has complied with 19 C.F.R. § 165.4 by providing necessary public summaries of the confidential information, and that Royal Brush has not established that CBP had failed to provide Royal Brush with due process. *Id.* at 1369.

The trial court also rejected Royal Brush's contention that CBP's consideration of the Philippines Shipper's overall production capacity constituted a new issue; that Royal Brush lacked sufficient notice of the issue; and that Royal Brush did not have an adequate opportunity to respond to this information due to CBP's rejection of Royal Brush's March 12, 2019 submission. *Id.* at 1369-71. The trial court concluded that Royal Brush failed to "provide authority for the proposition that adequate notice of the evasion investigation required CBP to provide advance notice regarding each aspect of the inquiry that CBP might find relevant to its investigation and determination." *Id.* at 1369-70. Regarding the Philippines Shipper's overall production capacity, the trial court relied on CBP's finding that all of the Philippines Shipper's entries for the period of investigation were on the record, not only Royal Brush's entries and, accordingly, "Royal Brush should not be surprised that CBP's 'investigation could potentially consider the Philippine{ } Shipper's overall production capacity' given the relevance of a manufacturer's production capacity to a transshipment investigation." *Id.* at 1370 (quoting Appx000029). The trial court concluded that CBP provided "a reasoned

analysis {and} explanation" for its decision to reject Royal Brush's March 12, 2019 submission: "CBP's interpretation of its regulations with regard to 'new factual information,' in a manner consistent with completing its investigation and meeting its statutory deadlines, is reasonable." *Id.* at 1371.

Finally, the trial court rejected Royal Brush's challenge to CBP's finding of evasion based on the Philippines Shipper's insufficient production capacity. *Id.* at 1371-73. The trial court explained that, because "CBP was unable to verify the Philippine Shipper's production of pencils tied to the seven Royal Brush invoices reviewed at verification{,}" CBP "then looked to confirm whether the Philippine Shipper's overall production capacity was adequate to meet the company's total volume of exports to the United States." *Id.* at 1372-73. The trial court concluded that "{t}he Philippine Shipper effectively failed verification on that issue as well, because although the company '*did* appear to have the capacity to produce pencils, it did not appear to be able to produce pencils in the quantities alleged for the company's 2018 operations.'" *Id.* at 1373. The trial court thus concluded that CBP's finding of evasion — "based on its examination of the evidence gathered during the investigation and the well-documented failures at verification, including the Philippine Shipper's failure to verify the production of the pencils shipped to Royal Brush" — was supported by a reasoned explanation that demonstrates "a 'rational connection between the facts found and the choice made{.}'" *Id.*

(quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## SUMMARY OF THE ARGUMENT

Royal Brush fails to demonstrate that it was deprived of constitutional due process because CBP did not disclose the business confidential information upon which it relied for the evasion determination. Pursuant to 19 C.F.R. § 165.4(a), CBP was authorized to place only public summaries of confidential business information on the record. The trial court correctly held that Royal Brush failed to demonstrate that it has a constitutional due process right to access to that business confidential information, or that it was deprived of the process to which it was due — notice and an opportunity to be heard. Even the cases upon which Royal Brush relies recognize that due process does not require the disclosure of confidential information.

Royal Brush also fails to establish that the Verification Report included "new factual information" to which it was entitled to respond pursuant to 19 C.F.R. § 165.23(c)(1), and that CBP's rejection of its submission contravened its own regulation and Royal Brush's right to due process. The trial court correctly concluded that CBP properly rejected Royal Brush's March 2019 submission in response to the Verification Report because that Report did not constitute "new factual information" under the regulation and, thus, a rebuttal submission was not

warranted. In its remand redetermination, CBP further explained that it does not consider a verification report to be "new factual information" as that phrase is used in 19 C.F.R. § 165.23(c)(1) because a verification report serves only to document CBP's verification of information previously placed on the record pursuant to § 165.23.

Finally, Royal Brush fails to demonstrate that CBP's evasion determination is not supported by substantial evidence. As the trial court observed, CBP was unable to verify the Philippines Shipper's production of pencils tied to the seven Royal Brush invoices reviewed at verification. As a result, CBP then looked to confirm whether the Philippines Shipper's overall production capacity was adequate to meet the company's total volume of exports to the United States. The Philippines Shipper also failed verification on that issue because the company did not appear to be able to produce pencils in the quantities alleged for the company's 2018 operations. In its evasion determination, CBP also relied on Royal Brush's response to the CF 28 in which it provided two certifications from a third-party certification service indicating that the pencils were of Chinese origin. Substantial evidence, including documents submitted by Royal Brush, information provided by the Philippines Shipper, and evidence collected during the CBP Attaché's site-visit, support CBP's evasion determination.

Because Royal Brush has failed to establish any error by the trial court, the

judgment should be affirmed in all respects.

## ARGUMENT

### I. Standard Of Review

The Court applies anew the same standard of review used by the trial court. *Atar S.r.l. v. United States*, 730 F.3d 1320, 1325 (Fed. Cir. 2013). Under EAPA, the trial court must determine whether a determination issued pursuant to 19 U.S.C. § 1517(c) or an administrative review issued pursuant to 19 U.S.C. § 1517(f) was "conducted in accordance with those subsections." 19 U.S.C. § 1517(g)(1). In so doing, the Court "shall examine . . . whether {CBP} fully complied with all procedures under subsections (c) and (f)" and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 1517(g)(2). "An abuse of discretion occurs {when} the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation omitted); *see also United States v. Eurodif S.A.*, 555 U.S. 305, 316 & n.6 (2009) ("The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence.") (citation omitted)).

"Substantial evidence" means "more than a mere scintilla" of evidence that "a reasonable mind might accept as adequate to support a conclusion." *Ningbo Dafa Chem. Fiber Co.*, 580 F.3d at 1253 (internal quotation marks and citations omitted). Even if the Court may draw two inconsistent conclusions from the evidence contained in the record, it "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citation omitted); *accord Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1385 (Fed. Cir. 2014).

## II. The Trial Court Correctly Concluded That CBP's Compliance With Its Regulation Did Not Deprive Royal Brush Of Due Process

Royal Brush contends that CBP unlawfully relied on "secret evidence" in making its EAPA determination in violation of its due process rights. Appllt. Br. at 16-22. Specifically, Royal Brush maintains that it was entitled to: (1) the numerical data used by CBP to calculate the Philippines Shipper's overall production capacity; (2) photographs taken by the CBP Attaché to document his observations; and (3) information from the Verification Report, including 32 pages of photographic content and 11 exhibits containing documents subject to verification, identifying information about certain invoice and purchase order numbers, and the identity of the Philippines Shipper's personnel whom the agency interviewed. *Id.* at 17, 19-22. Royal Brush has failed to establish that the trial

court erred in concluding that it possesses no due process right to such confidential business information.

### A. Legal Standard Governing Procedural Due Process

"The Fifth Amendment prohibits the deprivation of life, liberty or property without due process of law." *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1341 (Ct. Int'l Trade 2021) (citing U.S. CONST. amend. V). "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Int'l Custom Products, Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)). "If the plaintiff has been deprived of a life, liberty, or property interest, the next question is what process is due." *Int'l Custom Products, Inc. v. United States*, 549 F. Supp. 2d 1384, 1396 (Ct. Int'l Trade 2008).

Under "the tripartite test that the Supreme Court has used to determine what process is due in any particular situation{,}" courts consider "(1) the 'private interest' at stake, (2) the 'risk of an erroneous deprivation' and the 'probable value' of additional process, and (3) the 'Government's interest,' which includes any 'administrative burdens' that additional process would impose." *Miami Free Zone Corp. v. Foreign-Trade Zones Bd.*, 136 F.3d 1310, 1314 (Fed. Cir. 1998) (quoting

*Zinermon v. Burch*, 494 U.S. 113, 127 (1990) and citing *Mathews*, 424 U.S. at 335).

While "engaging in foreign commerce is not a fundamental right protected by notions of substantive due process," *NEC Corp. v. United States*, 151 F.3d 1361, 1369 (Fed. Cir. 1998), an importer participating in an administrative proceeding has a procedural due process right to "notice and a meaningful opportunity to be heard," *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761-62 (Fed. Cir. 2012) (quoting *LaChance v. Erickson*, 522 U.S. 262, 266, (1998)). "The test is one of fundamental fairness in light of the total circumstances." *Nereida Trading Co., Inc. v. United States*, 683 F. Supp. 2d 1348, 1355 (Ct. Int'l Trade 2008) (citations omitted).

### B. The Trial Court Correctly Concluded That CBP Afforded Royal Brush With Due Process By Providing It With Public Summaries Of Confidential Information Pursuant To CBP's Regulation

The trial court correctly concluded that Royal Brush had received all the process that it was due because CBP complied with 19 C.F.R. § 165.4 by providing the parties with public summaries of the confidential information, and Royal Brush had an opportunity to respond to that information. *Royal Brush II*, 545 F. Supp. 3d at 1366. In particular, the trial court concluded that "CBP has shared information with Royal Brush consistent with its regulation and in a manner that balances the need to disclose evidence against an importer with the need to protect certain

information from unauthorized disclosure." *Id.* at 1367. The trial court further concluded that "CBP's regulation, which requires 'a summary of the bracketed information in sufficient detail to permit a reasonable understanding of the substance of the information,' 19 C.F.R. § 165.4(a)(2), provides importers such as Royal Brush an 'adequate opportunity . . . to respond to the evidence used against them{.}'" *Id.*

As for Royal Brush's challenge to the adequacy of the public summaries, the trial court observed that "Royal Brush does not contest the confidential nature of the information, which CBP is precluded from disclosing by statute and regulation." *Id.* (citing 19 C.F.R. § 165.4(a) and 18 U.S.C. § 1905). The trial court concluded that "conveying the 'substance of the information' in public summaries within the meaning of CBP's regulation must be understood as nevertheless allowing for the protection of the confidential information." *Id.* at 1367-68. As for Royal Brush's insistence on its need for the actual figures, the trial court concluded that "Royal Brush has not demonstrated that due process requires such access." *Id.* at 1368. Rather, the trial court concluded, due process "requires notice and a meaningful opportunity to be heard, . . . which were provided here in the form of public summaries and comment procedures." *Id.* (internal citations omitted).

### C. **The Trial Court Correctly Concluded That Due Process Does Not Require An Administrative Protective Order Procedure**

Royal Brush contends that CBP's alleged due process violations are a direct result of its flawed adjudication procedures. Appllt. Br. at 23-25. In particular, Royal Brush contends that CBP's regulations do not provide for sharing business confidential information among the parties through an administrative protective order (APO) such as the one used in antidumping and countervailing duty proceedings, and that this omission can be remedied because "EAPA does not bar Customs from protecting business confidential information or from using protective orders." *Id.* at 23 (citing 19 C.F.R. Part 165). The trial court interpreted this argument as "Royal Brush appear{ing} to suggest that the court should impose an extra-statutory requirement akin to the APO procedure used in Commerce proceedings." *Royal Brush II*, 545 F. Supp. 3d at 1367 n.11. The trial court correctly rejected this argument because none of the cases Royal Brush cited supports such a result. *Id.*

Royal Brush further contends that "{t}he absence of explicit statutory authorization {for an APO} does not preclude federal agencies from taking steps to protect proprietary information used in their adjudications, while making that information available to the parties." Appllt. Br. at 24. While the absence of statutory authorization may not necessarily preclude agencies from promulgating a regulation to govern an APO procedure, nor does statutory silence *compel* agencies

to institute such a procedure. *See Avesta AB v. United States*, 689 F. Supp. 1173, 1189 (Ct. Int'l Trade 1988) (in rejecting plaintiffs' challenges to the adequacy of the International Trade Commission's procedures, holding that, "{i}f Congress had intended hearings at this initial stage, Congress could have provided or mandated them.").

Nor does Royal Brush explain how the lack of an APO regulation deprived it of due process. Royal Brush does not have a due process right to a "particular form of procedures." *See Cook v. United States*, 536 F.2d 365, 368 (Ct. Cl. 1976) ("{I}t is axiomatic that due process guarantees no particular form of procedures.") (citing *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610 (1974)).

### D. <u>Royal Brush Fails To Establish That The Trial Court Erred</u>

Relying on case law that is either inapposite or undermines its arguments, Royal Brush contends that CBP denied it due process by failing to disclose confidential business information. Appllt. Br. at 16-22. Royal Brush's claims lack merit.

As a preliminary matter, Royal Brush's due process challenges are foreclosed by this Court's decision in *PSC VSMPO-Avisma Corp.*, in which this Court rejected arguments similar to those Royal Brush lodges here, challenging on due process grounds, an agency's compliance with its regulations related to the administrative record. 688 F.3d at 760-61. This Court concluded that the due

process right to which plaintiff was entitled was the right to notice and a meaningful opportunity to be heard, all of which had been afforded to the plaintiffs based on the agency's compliance with its regulations. *Id.* In so holding, this Court recognized that courts should not intrude upon an agency's power to apply its own procedures for the timely resolution of administrative proceedings. *PSC VSMPO-Avisma Corp.* applies with equal force here. *Id.*

Consistent with *PSC VSMPO-Avisma Corp.*, the trial court recognized that "CBP's interpretation of its regulations with regard to 'new factual information,' in a manner consistent with completing its investigation and meeting its statutory deadlines, is reasonable." *Royal Brush II*, 545 F. Supp. 3d at 1371; *see also Diamond Tools Tech. LLC*, 545 F. Supp. 3d at 1343 ("Customs complied with its regulation concerning public summarization of confidential information{ }" and, "{a}s such, the court finds that Customs did not violate {plaintiff's} due process rights."); *Sichuan Changhong Elec. Co. v. United States*, 466 F. Supp. 2d 1323, 1327-29 (Ct. Int'l Trade 2006) (rejecting due process claim when the agency complied with its statutory and regulatory obligations, which otherwise constituted "a reasonable means to bring an administrative procedure to closure").

Royal Brush fails to establish that the trial court's due process analysis is erroneous. For example, Royal Brush simply ignores *Mathews v. Eldridge*, the United States Supreme Court case upon which the trial court relied, which

established a three-factor balancing test to determine "whether the administrative procedures provided {in a given case} are constitutionally sufficient{.}" *Royal Brush II*, 545 F. Supp.3d at 1365 (quoting *Mathews*, 424 U.S. at 335). Royal Brush never explains how the trial court erred in applying that standard, which dooms its due process challenge. Nor does Royal Brush explain why the trial court erred in holding that, by complying with its regulation, CBP provided Royal Brush with all the process it is due.

Although asserting that it is entitled to the confidential business information relied upon by CBP (Appllt. Br. at 16-22), Royal Brush fails to cite any legal authority to support its theory that the trial court erred in shielding from disclosure the business propriety information at issue here in light of the Trade Secrets Act, 18 U.S.C. § 1905, and 19 C.F.R. § 165.4(a). CBP is not required or permitted to provide confidential information to Royal Brush, so it necessarily follows that CBP did not act unlawfully by failing to provide such business confidential information. Neither the EAPA statute nor CBP's regulations permits, let alone requires, CBP to release confidential business information to Royal Brush. Rather, in an EAPA investigation, interested parties "may request that CBP treat any part of the submission as business confidential information," and CBP will treat the information as such so long as certain requirements are satisfied. 19 C.F.R. § 165.4(a). Thus, there is simply no legal basis on which Royal Brush can

establish an entitlement through CBP to the Philippines Shipper's confidential business information. Accordingly, Royal Brush fails to establish that CBP acted unlawfully by failing to disclose the business confidential information.

Indeed, Royal Brush has relied on 19 C.F.R. § 165.4(a) to protect its own confidential and proprietary information from disclosure. In its submissions to CBP, Royal Brush requested that CBP maintain its information in confidence to avoid competitive injury and prevent competitors from learning "valuable knowledge" about Royal Brush. Appx001010-001011.

Further, the cases upon which Royal Brush relies undermine its conclusory procedural due process arguments. For example, Royal Brush relies on *Ralls Corporation v. Committee on Foreign Investment* (*see* Appllt. Br. at 27), but in that case, the United States Court of Appeals for the District of Columbia Circuit emphasized that appellants were entitled to access to only "unclassified evidence," stating "we made clear — and we iterate today — that due process does not require disclosure of *classified* information supporting official action." 758 F.3d 296, 319 (D.C. Cir. 2014) (emphasis in the original). Thus, *Ralls Corporation* does not support Royal Brush's position that parties are entitled to access to information irrespective of the protections afforded to that information. Rather, *Ralls Corporation* is consistent with the trial court's holdings in both *Royal Brush I* and *Royal Brush II* that Royal Brush is not entitled to access to business confidential

information because "Congress has not mandated that Royal Brush be afforded such access and Royal Brush has not shown that due process requires it." *Royal Brush I*, 483 F. Supp. 3d at 1308; *see also Royal Brush II*, 545 F. Supp. 3d at 1366 ("Royal Brush has not shown that greater access to confidential information is otherwise constitutionally required.").

Royal Brush also relies on *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1070 (9th Cir. 1995) (*see* Appllt. Br. at 17-18), but the trial court correctly distinguished that case "because the information relied on by {the agency there} was withheld *in toto* from the petitioners." *Royal Brush II*, 545 F. Supp. 3d at 1366-67. Further, in that case, the Ninth Circuit cited Supreme Court and District of Columbia Circuit cases recognizing that "the courts have allowed the Government to keep certain information confidential," even though "the exceptions to full disclosure are narrowly circumscribed." *Am.-Arab Anti-Discrimination Comm.*, 70 F.3d at 1070. In this case, CBP withheld the confidential business information because it is prohibited from disclosing this information by its regulation, as well as by the Trade Secrets Act, 18 U.S.C. § 1905, without authorization. *See, e.g.*, *R & W Flammann GmbH v. United States*, 339 F.3d 1320, 1323 (Fed. Cir. 2003) ("The Trade Secrets Act, a criminal statute, bars government officials from disclosing or making known 'to any extent

not authorized by law' numerous categories of information, including confidential and trade secret information.") (quoting 18 U.S.C. § 1905).

Belatedly, Royal Brush now addresses the first *Mathews* factor that it failed to address before the trial court — the factor governing "the private interest that will be affected by the official action{.}" *See* Appllt. Br. at 17; *see also Royal Brush II*, 545 F. Supp. 3d at 1365 (observing that "Royal Brush does not frame its argument in terms of the *Mathews* balancing test and makes no argument as to the first and third factors"). Royal Brush appears to assert a private interest based on its "significant financial stake in the outcome of the EAPA investigation{.}" Appllt. Br. at 17. Royal Brush's argument is raised for the first time on appeal and, thus, is waived. *See, e.g., Apple Inc. v. Voip-Pal.com, Inc.*, 976 F.3d 1316, 1324 (Fed. Cir. 2020) ("Apple did not identify any property interests in the course of its due process arguments below{ }" and, thus, "{w}e conclude that its arguments identifying property interests for the first time on appeal are waived.").

Royal Brush's assertion that it "has a right to procedural due process" (*see* Appllt. Br. at 17) is undisputed, but what is disputed is that Royal Brush's right to procedural due process entitles it to what it seeks here: access to the confidential business information that CBP obtained from the Philippine Shipper. Here, after weighing the *Mathews* factors, the trial court correctly concluded that Royal Brush has not demonstrated that due process requires access to confidential business

information, but rather "{i}t requires notice and a meaningful opportunity to be heard, . . . which were provided here in the form of public summaries and comment procedures." *Royal Brush II*, 545 F. Supp. 3d at 1368 (citing *PSC VSMPO-Avisma Corp.*, 688 F.3d at 761-62).

Royal Brush's reliance on *Bowman Transportation, Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 288 n.4 (1974), is also unavailing because Royal Brush has not been "foreclose{d} an opportunity to offer a contrary presentation." *See* Appllt. Br. at 17. Rather, as the trial court correctly recognized, in this case, "CBP has shared information with Royal Brush consistent with its regulation and in a manner that balances the need to disclose evidence against an importer with the need to protect certain information from unauthorized disclosure." *Royal Brush II*, 545 F. Supp. 3d at 1367. The trial court further concluded that the regulation's public summary requirement "provides importers such as Royal Brush an adequate opportunity . . . to respond to the evidence used against them{.}" *Id.* (internal quotations omitted).

Royal Brush also relies on *Flyers Rights Education Fund, Inc. v. Federal Aviation Administration*, 864 F.3d 738, 745-46 (D.C. Cir. 2017) (Appllt. Br. at 18), a case involving the Federal Aviation Administration's denial of plaintiff's petition to promulgate rules governing size limitations for aircraft seats, but that case is factually distinguishable. There, the agency "ha{d} given no reasoned explanation

for withholding the {emergency evacuation} tests in their entirety{.}" *Flyers Rights Education Fund, Inc.*, 864 F.3d at 746. Here, however, CBP provided a reasoned explanation for withholding the confidential business information based on both the Trade Secrets Act and CBP's regulation. Appx000040. Further, as the trial court observed, "Royal Brush does not contest the confidential nature of the information, which CBP is precluded from disclosing by statute and regulation." *Royal Brush II*, 545 F. Supp. 3d at 1367.

Also unavailing is Royal Brush's reliance on *Doty v. United States*, 53 F.3d 1244, 1251 (Fed. Cir. 1995) (Appllt. Br. at 18), a case involving an agency's withholding of evidence upon which it relied to charge a program participant with violating a contract. In *Doty*, the agency "refused {plaintiff} access to the administrative file concerning his case," and "the agency violated its own regulations in the hearing process{.}" 53 F.3d at 1247, 1248. In this case, however, CBP complied with its regulations when providing Royal Brush with public summaries of confidential business information. *See Royal Brush II*, 545 F. Supp. 3d at 1367. Similarly unavailing are Royal Brush's reliance on *Ramirez v. Department of Homeland Security*, 975 F.3d 1342, 1350 (Fed. Cir. 2020), and *Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio*, 301 U.S. 292, 303 (1937) (*see* Appllt. Br. at 17, 28); neither case involves protected confidential information.

Royal Brush's reliance on *Roytberg v. United States*, No. 15-cv-5560, 2016 WL 1559151, at *2 (E.D.N.Y. Apr. 18, 2016), is also misplaced because that case involved disclosure under the Federal discovery rules. Federal discovery rules are not relevant to these administrative proceedings. *See Kemira Fibres Oy v. United States*, 858 F. Supp. 229, 235 (Ct. Int'l Trade 1994) ("The fact is that the differences in the origin and function of administrative agencies preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts.") (citations omitted).

Similarly without merit is Royal Brush's contention that the trial court "incorrectly treated the confidential nature of the information at issue as being dispositive of Royal Brush's due process rights{.}" Appllt. Br. at 26-27. Royal Brush contends this holding is incorrect because 19 C.F.R. § 165.4 "does not preclude disclosure of confidential information to other parties pursuant to some form of protective mechanism." *Id.* at 27. But, as discussed above, no such "protective mechanism" exists in CBP's regulations. Rather, 19 C.F.R. § 165.4(a) authorizes CBP to provide parties only public summaries of confidential business information.

Also without merit is Royal Brush's contention that the Trade Secrets Act does not bar CBP from disclosing business confidential information because "it is not violated by discovery to a party in an administrative adjudication." Appllt. Br.

at 27. But the Armed Services Board of Contract Appeals (ASBCA or Board) decision Royal Brush cites in support of this argument is inapposite because ASBCA is authorized by the Contract Disputes Act (CDA) and ASBCA's rules to issue protective orders governing trade secrets and other confidential information. *See Gen. Dynamics Ordnance and Tactical Sys., Inc.*, ASBCA Nos. 56870, 56957, 2010 WL 3119469 (June 1, 2010) ("{T}he Board is authorized by the {CDA} and by its duly published Rules to issue protective orders in connection with the disclosure of trade secrets or related confidential business information in appeals before the Board{ }" and, thus, "{a}ny such disclosures are authorized by law and do not violate the {Trade Secrets Act}.").

In addition to failing to establish that due process requires that it have access to confidential business information, Royal Brush also fails to show that lack of access to that information has caused it prejudice. As the trial court explained, "the Public Verification Report disclosed that CBP relied on invoices specific to Royal Brush to calculate the Philippine Shipper's overall production capacity; the source of CBP's information was not redacted." *Royal Brush II*, 545 F. Supp. 3d at 1368 (citing Appx001201-001202). Thus, the trial court found that "Royal Brush was not precluded from making an argument regarding the unrepresentativeness of its purchases from the Philippine Shipper in its written submission." *Id.* Accordingly, the trial court concluded that "Royal Brush has not shown that it was

prejudiced by CBP's preparation of the public version of the Verification Report." *Id.*; *see also Diamond Tools Tech. LLC*, 545 F. Supp. 3d at 1343 (holding that plaintiff "has failed to demonstrate how access to the proprietary information would have aided the company during the administrative proceeding"); *Former Emps. of Apache Corp. v. United States*, 850 F. Supp. 24, 32 (Ct. Int'l Trade 1994) ("Labor's failure to provide plaintiffs with actual notice does not amount to a denial of due process if the lack of notice did not prejudice plaintiffs.").

In sum, the trial court correctly held that CBP complied with 19 C.F.R. § 165.4(a) and, in doing so, provided Royal Brush with all the process it is due. *See, e.g.*, *PSC VSMPO-Avisma Corp.*, 688 F.3d at 761-62 (in rejecting plaintiff's claim that the exclusion of an untimely-filed affidavit pursuant to regulation violated its due process rights, holding that "{t}he due process right to which {plaintiff} was entitled was 'the right to notice and a meaningful opportunity to be heard'").

## III. CBP's Rejection Of Royal Brush's March 2019 Submission Was Lawful

Royal Brush also contends that the trial court erred in sustaining CBP's decision to reject Royal Brush's March 12, 2019 submission related to the Verification Report's conclusion that the Philippines Shipper lacked the capacity to produce all of the pencils it exported to the United States in 2018. Appllt. Br. at 28-35. In particular, Royal Brush maintains that the Verification Report included

"new factual information" to which it was entitled to respond pursuant to 19 C.F.R. § 165.23(c)(1), and that CBP's rejection of its submission contravened its own regulation and Royal Brush's right to due process. *Id.* at 28. As demonstrated below, the trial court correctly concluded that CBP complied with its regulation and, thus, afforded Royal Brush with all the process it was due.

### A. The Trial Court Correctly Concluded That CBP Properly Rejected Royal Brush's Submission Pursuant To Its Regulation

The trial court correctly concluded that CBP's rejection of Royal Brush's March 2019 submission complied with its regulation and did not deprive Royal Brush of due process.

Three regulatory provisions are relevant to placing information on the record during an EAPA investigation. First, under 19 C.F.R. § 165.23(c)(2), parties to the investigation have 200 days from the date of the initiation of the investigation to submit factual information on the record. Second, in connection with verification information such as the Verification Report, under 19 C.F.R. § 165.25(a), "CBP will place any relevant information on the administrative record and provide a public summary." 19 C.F.R. § 165.25(b). Third, pursuant to 19 C.F.R. § 165.23(c)(1), on or after the 200th calendar day after the initiation of the investigation, "{i}f CBP places new factual information on the administrative

record{,} . . . the parties to the investigation will have ten calendar days to provide rebuttal information to the new factual information." 19 C.F.R. § 165.23(c)(1).

In February 2019, CBP placed the Verification Report and attachments on the record pursuant to 19 C.F.R. § 165.25(b). Appx001194-001237. On March 12, 2019, Royal Brush responded to CBP's invitation to submit a rebuttal. Appx000206-000207. However, on March 19, 2019, CBP rejected Royal Brush's March 12, 2019 submission after determining that it had misinterpreted its regulation, and that the Verification Report did not, in fact, contain "new factual information" under 19 C.F.R. § 165.23(c)(1). Appx000208. In its rejection notification, CBP explained that, while 19 C.F.R. § 165.23(c)(1) allows for submission of rebuttal information "{i}f CBP places new factual information on the administrative record after the 200th calendar day," the verification report did not contain new information and, thus, "a rebuttal to the verification is not warranted." *Id.* In its remand redetermination, CBP further explained that it does not consider a verification report to be "new factual information" as that phrase is used in 19 C.F.R. § 165.23(c)(1) because "a verification report serves only to document CBP's verification of information previously placed on the record{.}" Appx000020. This is so because of the very nature of verification, which "is the process by which CBP checks, reviews, and corroborates factual information previously placed on the record. Appx000021. Because a verification report does

not constitute "new factual information," the parties are not able to submit "rebuttal information" in response. Appx000020.

The trial court relied on CBP's explanation that "the calculations it used {in the Verification Report} were not 'new factual information' because they were 'simply CBP using and verifying the factual data on the record' and were 'a natural part of CBP's investigation as to whether evasion occurred.'" *Royal Brush II*, 545 F. Supp. 3d at 1370 (quoting Appx000023). The trial court also relied on CBP's explanation that allowing post-verification submissions to address discrepancies identified at verification, as Royal Brush calls for, would result in "an endless cycle of attempts to verify those post-verification submissions." *Id.* at 1371 (citing Appx000020). The trial court concluded that "CBP's interpretation of its regulations with regard to 'new factual information,' in a manner consistent with completing its investigation and meeting its statutory deadlines, is reasonable." *Id.* Accordingly, the trial court found that CBP has provided "'a reasoned analysis {and} explanation' for its decision to reject Royal Brush's rebuttal submission." *Id.*

Although not invoking the deference courts accord to an agency's interpretation of its own regulations under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842 (1984), the trial court's analysis — focused as it is on the reasonableness of CBP's interpretation of 19

C.F.R. § 165.23(c)(1) — is consistent with that standard. *See, e.g.*, *Ford Motor Co. v. United States*, 809 F.3d 1320, 1324-25 (Fed. Cir. 2016) (holding that the trial court did not err in affording *Chevron* deference to CBP's remand explanation concerning a statutory interpretation and in finding the explanation reasonable).

### B. Royal Brush Fails To Establish Trial Court Error

Royal Brush challenges the trial court's finding that the Verification Report does not constitute "new factual information" under 19 C.F.R. § 165.23(c)(1) (*see* Appllt. Br. at 28-35), claiming that CBP failed to comply with the regulation and denied Royal Brush due process when rejecting its March 12, 2019 submission. These arguments are unfounded.

As a preliminary matter, Royal Brush's interpretation of "new factual information" as set forth in 19 C.F.R. § 165.23(c)(1) would render superfluous 19 C.F.R. § 165.25(b), the regulation governing placing verification information on the administrative record. Pursuant to 19 C.F.R. § 165.25(a), "CBP may in its discretion verify information in the United States or foreign countries collected under § 165.23 as is necessary to make its determination" and, pursuant to 19 C.F.R. § 165.25(b), CBP is authorized to "place any relevant information on the administrative record and provide a public summary." Based on a plain reading, 19 C.F.R. § 165.25(b) governs information related to the verification such as the Verification Report. The information that Royal Brush would have this Court

deem "new factual information" under 19 C.F.R. § 165.23(c)(1) is the same Verification Report that CBP placed on the record pursuant to 19 C.F.R. § 165.25(b). Thus, Royal Brush's interpretation of "new factual information" in 19 C.F.R. § 165.23(c)(1) as encompassing the Verification Report would render superfluous 19 C.F.R. § 165.25(b), the provision governing CBP's placement of verification information on the record. Courts should reject interpretations of statutes and regulations that would render superfluous other parts of the same statutory or regulatory scheme. *See, e.g.*, *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("{T}he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

Moreover, this Court and the trial court have previously rejected arguments in which plaintiffs insist on making submissions during administrative proceedings despite the restrictions set forth in statutes and regulations. In *PSC VSMPO-Avisma Corp.*, this Court examined a Commerce regulation governing the submission of new factual information, 19 C.F.R. § 351.301(b). 688 F.3d at 760. Applying that regulation, Commerce rejected plaintiff's submission of an affidavit because, under that regulation, it constituted new factual information and was, thus, untimely submitted pursuant to the deadline set forth in 19 C.F.R. § 351.301(b). *Id.* Although concluding that the affidavit constituted new factual

information and was untimely submitted under Commerce's regulation, the trial court nonetheless ordered Commerce to include the affidavit in the record due to what the trial court characterized as "not typical" circumstances. *Id.* at 761. This Court concluded that, "{a}lthough the trade court correctly determined that the {affidavit} was untimely-submitted factual information, the {trade} court erred when, in spite of this determination, it ordered Commerce to admit the affidavit into the record because of circumstances the court described as 'not typical.'" *Id.* This Court further explained that, "{i}n our view, the Trade Court improperly intruded upon Commerce's power to apply its own procedures for the timely resolution of antidumping reviews." *Id.*

Further, in *PSC VSMPO-Avisma Corp.*, this Court explained that it "will defer to the judgment of an agency regarding the development of the agency record." *See id.* at 760 (explaining the Court's role in reviewing Commerce's antidumping duty administrative determinations). "To do otherwise would 'run the risk of propelling the courts into the domain which Congress has set aside exclusively for the administrative agency.'" *Id.* (quoting *FPC v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)); *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) (reversing order instructing Commerce to consider extra-record information because "the trial court's order usurps agency power, undermines Commerce's ability to administer the statute

entrusted to it, contradicts important principles of finality, and discourages compliance").

Similarly, in *Sichuan Changhong Elec. Co.*, the trial court was faced with plaintiffs seeking to submit new factual information despite provisions in the antidumping statute and implementing regulations directing the International Trade Commission (ITC) to disregard new factual information. 466 F. Supp. 2d at 1328-29. The trial court concluded that "limiting the submission and consideration of new factual information is reasonable because an agency 'clearly cannot complete its work unless it is able at some point to "freeze" the record and make calculations and findings based on that fixed and certain body of information.'" *Id.* at 1329 (quoting *Bowe-Passat v. United States*, 17 C.I.T. 335, 339 (1993)); *cf. Navneet Publications (India) Ltd. v. United States*, 32 C.I.T. 169, 183 (2008) (holding the ITC "reasonably excluded {plaintiff's} submission" submitted on the day the record closed because "the {ITC} would have been required to reopen the record to verify the accuracy of the proposed reductions and provide the other parties the opportunity to submit any analysis or new factual information in response").

Ignoring the regulatory scheme and relevant case law, Royal Brush raises several arguments, all of which are unfounded. First, Royal Brush contends that the Verification Report constituted "new factual information" under 19 C.F.R. § 165.23(c)(1) because: (1) during the verification process, the agency developed

evidence that the Philippines Shipper lacked the capacity to manufacture all of the pencils it shipped to its U.S. customers during the period at issue (Appllt. Br. at 29; *see also id.* at 33); (2) until then, CBP's "investigation had focused far more narrowly{ } on whether the Philippine Manufacturer had sufficient capacity, raw materials, and staff to produce the seven orders of pencils that Royal Brush had purchased{,}" (*id.* at 29); and (3) CBP "did not seek, nor did the Philippine Manufacturer provide, data about its overall production capacity." *Id.* Royal Brush also contends that CBP "had not given it notice that the overall production capacity of the Philippine Manufacturer was an issue to be addressed." *Id.* at 31. Royal Brush is wrong for several reasons.

As CBP explained in its remand redetermination, "the Philippine Shipper placed information regarding its overall production capacity on the record," and all entries from the Philippine Shipper were placed on the record during the investigation. Appx000028. Thus, reference to or analysis of this information in the Verification Report does not qualify, under any definition, as "new factual information." *Id.* Further, as CBP explained, verification "is not a continuation of the information gathering stage of the investigation." Appx000020. CBP's explanation is reasonable based on the regulatory scheme.[5]

---

[5] Royal Brush asserts that CBP appears to have relied upon the "logical outgrowth" test that courts apply to determine whether an agency gave the public

Related to Royal Brush's inadequate-notice argument, the trial court correctly concluded that Royal Brush failed to provide support for its position that adequate notice of the evasion investigation required CBP to provide advance notice regarding each aspect of the inquiry that CBP might find relevant to its investigation and determination. *Royal Brush II*, 545 F. Supp. 3d at 1369-70; *see also, e.g.*, *MidContintent Nail Corp. v. United States*, 949 F. Supp. 2d 1247, 1278 (Ct. Int'l Trade 2013) ("{A}gencies with statutory enforcement responsibilities . . . enjoy broad discretion in allocating investigative and enforcement resources."); *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1394-95 (Fed. Cir. 1997) (explaining Commerce maintains "discretionary authority to determine the extent of investigation and information it needs").

The trial court further observed that, CBP indicated that all of the Philippines Shipper's entries for the period of investigation were on the record, not only Royal Brush's entries and, thus, "Royal Brush should not be surprised that CBP's 'investigation could potentially consider the Philippine{ } Shipper's overall production capacity' given the relevance of a manufacturer's production capacity to a transshipment investigation." *Royal Brush II*, 545 F. Supp. 3d at 1370 (citing

---

adequate notice of a final rule that differs from the proposed rule that was published for comment. Appllt. Br. at 34-35 & n. 10. There is no indication in the remand redetermination that CBP relied on this test; rulemaking is not at issue in this case.

Appx000024, Appx000029).

Second, Royal Brush contends that CBP offered the trial court "differing constructions of 'new factual information'" because, during its first appeal, CBP explained that "its 'verification' process, by definition, cannot give rise to new factual information," but on remand, "adopted a different rationale" — "that its calculations were not new factual information because they were 'simply {CBP} using and verifying the factual data on the record and therefore {were} a natural part of {CBP's} investigation as to whether evasion occurred.'" Appllt. Br. at 30-31. CBP did not adopt a different rationale. Rather, CBP explained that, "{w}hile CBP's position is that a verification report should not contain 'new factual information,' CBP recognizes the possibility that information outside the scope of the verification and unrelated to the verification of information on the record may be discovered during a verification." Appx000021; *see also* Appx000026. Further, on remand, CBP was tasked with explaining why the Verification Report did not constitute "new factual information" and did so. *See* Appx000018-000029.

Third, Royal Brush contends that "there was nothing 'natural' or inevitable about Customs taking information relating to a handful of specific orders from Royal Brush and 'verifying' them by extrapolating the Philippine {Shipper's} overall production capacity for the entire year." Appllt. Br. at 31. Royal Brush's claim ignores the record evidence. As the trial court recognized, CBP did not base

its evasion determination solely on its conclusion that the Philippines Shipper lacked the capacity to produce all the pencils it shipped to the United States. *Royal Brush II*, 545 F. Supp. 3d at 1371. Rather, "CBP only turned to the Philippine Shipper's overall capacity after the agency was unable to verify the Royal Brush-specific production information that the Philippine Shipper submitted to CBP." *Id.* (citing Appx000023-000024). The trial court concluded that "CBP made two independent but mutually supportive verification findings, both of which supported its evasion determination." *Id.*

Fifth, Royal Brush asserts that "calculations of the Philippine Manufacturer's overall production capacity clearly constitute new factual information to which Royal Brush was entitled to respond" because CBP "treated the calculations in the Verification Report as 'findings' of 'trained CBP auditors' which carried the 'weight of { } evidence,' and on which the agency relied in its decision." Appllt. Br. at 32. The trial court correctly rejected this argument. Although "recogniz{ing} that certain expert analysis may assume the weight of evidence and, thereby, amount to '{d}ata or statements of fact in support of allegations, i.e., factual information{,}" the trial court concluded that such circumstances did not apply here. *See Royal Brush II*, 545 F. Supp. 3d at 1370 n.17 (quoting and citing cases). Rather, in this case, "CBP used the data to identify discrepancies and perform basic calculations for the purposes of verification — not

expert analysis that assumes the weight of evidence by making determinations about the reliability or importance of the data." *Id.* (citation and internal quotations omitted).

In support of its weight-of-the-evidence argument, Royal Brush relies on a patent case, *In re Kumar*, 418 F.3d 1361 (Fed. Cir. 2005) (Appllt. Br. at 33), but that case is inapposite. *In re Kumar* turned on the application of a former U.S. Patent and Trademark Office (PTO) regulation, 37 C.F.R. § 1.196(b), which provided that "when the Board . . . makes a new rejection of an appealed claim, the appellant may . . . submit . . . a showing of fact . . . and have the matter reconsidered." 418 F.3d at 1367. Royal Brush fails to explain the relevance of the Court's analysis of the PTO regulation to this case.

In sum, the trial court correctly concluded that CBP properly rejected Royal Brush's March 12, 2019 submission because CBP had not placed "new factual information" on the record pursuant to the regulation and, thus, a rebuttal from Royal Brush was not warranted. *See*, *e.g.*, *PSC VSMPO-Avisma Corp.*, 688 F.3d at 760.

## III. The Trial Court Correctly Concluded That CBP's Evasion Determination Was Reasonable And In Accordance With Law

Finally, Royal Brush contends that CBP's evasion determination is arbitrary and capricious. Appllt. Br. at 36-42. Royal Brush's arguments lack merit.

### A. The Trial Court Correctly Concluded That CBP's Evasion Determination Was Supported By Substantial Evidence

As the trial court found, CBP was unable to verify the Philippine Shipper's production of pencils related to the seven Royal Brush invoices reviewed at verification. *Royal Brush II*, 545 F. Supp. 3d at 1372. As a result, CBP then sought to confirm whether the Philippine Shipper's overall production capacity was adequate to meet its total volume of exports to the United States. *Id.* at 1372-1373. Although the Philippine Shipper appeared to have the capacity to produce pencils, it did not appear to be able to produce pencils in the quantities alleged for the its 2018 operations. *Id.* at 1373.

While recognizing that "Customs must carry its burden of issuing a determination that is supported by substantial evidence," and that "interested parties bear the burden of supplying Customs with accurate information that withstands verification{,}" the trial court concluded "{t}hat did not happen here." *Id.* (citing 19 U.S.C. §§ 1517(c)(1)(A), 1517(c)(2)). The trial court concluded, CBP's finding of evasion was supported by substantial evidence "based on its examination of the evidence gathered during the investigation and the well-documented failures at verification, including the Philippine Shipper's failure to verify the production of the pencils shipped to Royal Brush{.}" *Id.*

### B. <u>Royal Brush Fails To Show That The Trial Court Erred</u>

Ignoring the trial court's analysis, Royal Brush raises several extraneous challenges to CBP's affirmative evasion determination (Appllt. Br. at 36-42), all of which lack merit.

First, Royal Brush contends that this case involves a factual adjudication, which does not implicate the expert judgment of the agency and, thus, "the validity of the agency's decision in this case depends entirely on the weight of the evidence." Appllt. Br. at 37-38. The trial court correctly recognized that "{w}hile substantial evidence 'requires more than a mere scintilla' of evidence, it may represent 'less than the weight of the evidence.'" *Royal Brush II*, 545 F. Supp. 3d at 1372 n.20 (citing *Nucor Corp. v. United States*, 675 F. Supp. 2d 1340, 1345 (Ct. Int'l Trade 2010) (quoting *Altx, Inc. v. United States*, 370 F.3d 1108,1116 (Fed. Cir. 2004)). Further, investigations under EAPA *do* implicate CBP's "expert judgment" because it is the agency that Congress has entrusted to administer the statute. *See, e.g.*, *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992) (recognizing that, where Congress has entrusted an agency to administer a statute in fact-intensive situations, the agency's conclusion should be reversed only if the record evidence is "so compelling that no reasonable factfinder" could reach the same conclusion).

Second, Royal Brush contends that CBP's "analysis was fundamentally flawed" because it improperly allocated the burden of proof by requiring Royal Brush to substantiate that the production of imports took place in the Philippines. Appllt. Br. at 38. Royal Brush is wrong. As the trial court explained, "{w}hile Customs must carry its burden of issuing a determination that is supported by substantial evidence, 19 U.S.C. § 1517(c)(1)(A), interested parties bear the burden of supplying Customs with accurate information that withstands verification, *id.* § 1517(c)(2)." *Royal Brush II*, 545 F. Supp. 3d at 1373. The trial court concluded "{t}hat did not happen here . . . based on {CBP's} examination of the evidence gathered during the investigation and the well-documented failures at verification, including the Philippine Shipper's failure to verify the production of the pencils shipped to Royal Brush{.}" *Id.* Accordingly, the trial court concluded that CBP's evasion determination was supported by a reasoned explanation that contains "a 'rational connection between the facts found and the choice made{.}'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

In support of its burden-of-proof argument, Royal Brush cites *Creswell Trading Co. v. United States*, 15 F.3d 1054, 1060 (Fed. Cir. 1994) (Appllt. Br. at 39), but that case does not support its position. In *Creswell Trading*, the Court considered which party bears the ultimate burden of proof for establishing the existence of a countervailable subsidy, and what the appropriate procedural

burdens of production are during the course of a Commerce investigation to determine if such a countervailable subsidy exists. 15 F.3d at 1057, 1059. If anything, the trial court's holding in this case is consistent with *Creswell Trading*, which recognized that, although the agency bears the ultimate burden of proof, "{t}he burden of production should belong to the party in possession of the necessary information." *Id.* at 1060.

Third, Royal Brush contends that CBP "took a completely one-sided view of the verification team's findings{ }" because those findings show that the Philippines Shipper had the capacity to produce most of the pencils exported to the United States in 2018 rather than "some" of the pencils exported as the verification team found. Appllt. Br. at 39-40; *see also id.* at 40-41, 41-42. As the trial court observed in rejecting Royal Brush's challenges to CBP's findings related to the Philippines Shipper's overall capacity, "Royal Brush does not . . . specifically contest CBP's factual findings{,}" but only "the legal conclusion that CBP reached on the basis of those findings." *Royal Brush II*, 545 F. Supp. 3d at 1372. The trial court "declined to substitute its judgment for that of the agency" because Royal Brush failed to carry its burden of supplying CBP with accurate information that could withstand verification, and because CBP's evasion determination was supported by "the evidence gathered during the investigation and the well-documented failures at verification." *Id.* at 1372-73 (citation omitted).

Furthermore, Royal Brush's challenges to CBP's calculations related to the Philippines Shipper's production capacity are no more than an effort to have this Court reweigh the evidence. The Court should reject Royal Brush's invitation to reweigh the evidence, which is impermissible under the substantial evidence standard. *See, e.g.*, *SolarWorld Americas, Inc. v. United States*, 910 F.3d 1216, 1225 (Fed. Cir. 2018) (declining to "reweigh the evidence already considered by Commerce"); *Downhole Pipe & Equipment, L.P. v. United States*, 776 F.3d 1369, 1378 (Fed. Cir. 2015) ("This court declines Appellants' invitation to reweigh the evidence in order to reject Commerce's conclusions, which were well-supported and fully explained.").

Fourth, Royal Brush contends that the Philippines Shipper's production records, even if deemed deficient by CBP, do not establish that Royal Brush's pencils were manufactured elsewhere. Appllt. Br. at 41. But, as the trial court correctly explained, "CBP did not base its finding of evasion solely on its conclusion that the Philippine Shipper lacked the capacity to produce all the pencils it shipped to the United States." *Royal Brush II*, 545 F. Supp. 3d at 1371. Rather, CBP also relied on the following: the certifications included in Royal Brush's response to the CF 28, which indicated that China was the country of origin for the pencils (Appx000095 (citing Appx001390)); the CBP Attaché's observation, during his site visit to the Philippines Shipper's facility, that the

Philippines Shipper's "{s}taff appeared to be repacking China origin product into boxes labeled, 'Made in Philippines' for export" (*id.* (citing Appx000162)); and the photographs in the CBP Attaché's report showing Chinese pencils repacked as "made in the Philippines" (*id.* (citing Appx000163-000176)). CBP also explained that its ability to determine the extent to which the Philippines Shipper transshipped pencils from China was hindered by the Philippines Shipper's failure to cooperate and comply to the best of its ability, discussing at length that the "Philippines Shipper failed to provide substantial amounts of information requested by CBP at verification{.}" *See* Appx000095-000097. Based on the Philippines Shipper's failure to cooperate, CBP concluded that "an adverse inference is warranted." Appx000097. Thus, CBP's evasion determination is supported by substantial evidence. *See, e.g.*, *Downhole Pipe & Equipment, L.P.*, 776 F.3d at 1380 ("Commerce supported with substantial evidence its determinations . . . and reasonably rejected the alternatives proposed by {appellant}.").

Fifth, Royal Brush contends that the "evidentiary gap" was not filled by the Attaché's observations of finished pencils being repackaged at the Philippines Supplier's facility because "his observations corroborate the verification team's conclusion that some pencils (a minority of them) exported by the Philippine Manufacturer to the U.S. were transshipped, but they do not establish the extent of

such transshipment or whether any of the transshipped pencils were sent to Royal Brush." Appllt. Br. at 41. As a preliminary matter, CBP used the phrase "evidentiary gap" solely within the context of applying an adverse interference due to the failure of Royal Brush and the Philippines Shipper to provide sufficient evidence to demonstrate that the pencils imported by Royal Brush were manufactured in the Philippines. *Royal Brush II*, 545 F. Supp. 3d at 1363, 1373. Further, the CBP Attaché did not merely observe finished pencils being repackaged at the Philippine Supplier's facility, but also observed "staff . . . making minor alterations or simply sharpening pencils"; that manufacturing equipment was covered in dust or cobwebs; the "manufacturing warehouse did not indicate production of any products for some time"; that there was a lack of any raw materials; and that the storage area contained "boxes with Chinese characters and English language boxes stating, 'Made in the Philippines.'" Appx000162.

Finally, relying on *Rodriguez v. Department of Veterans Affairs*, 8 F.4th 1290, 1301 (Fed. Cir. 2021), Royal Brush contends that CBP's erroneous analysis of the record may be attributable to CBP's mistaken treatment of the "substantial evidence" standard as a standard of proof rather than as a standard of review. Appllt. Br. at 42 n.13. *Rodriguez* is inapposite because that case concerned 38 U.S.C. § 714, a statute Congress enacted in 2017 to provide expedited procedures by which the Secretary of Veterans Affairs may remove, demote, or suspend

employees if the Department of Veterans Affairs (VA) determines that such measures are warranted based on the covered individual's performance or misconduct. 8 F.4th at 1301. Section 714 provides that, on appeal to the Merit Systems Protection Board (MSPB or Board), "the administrative judge shall uphold" a decision by the VA "to remove, demote, or suspend an employee under subsection (a) if the decision is supported by substantial evidence." 38 U.S.C. § 714(d)(2)(A). *Id.* At issue in *Rodriguez* was whether section 714 permits the agency to apply a "substantial evidence" standard of proof in making disciplinary decisions in the first instance. *Id.* The Court held that "substantial evidence may not be used as the standard of proof in disciplinary actions under section 714" because, under section 714, "preponderance of the evidence is the minimal appropriate burden of proof" as to whether the alleged "misconduct had occurred." *Id.* at 1301. This Court explained that the references to "substantial evidence" in section 714 "are all explicitly directed to the standard of review to be applied by administrative judges and the Board." *Id.* at 1298.

Unlike the statute at issue in *Rodriguez*, however, the EAPA statute's reference to "substantial evidence" is *not* explicitly directed to the standard of review. Rather, the EAPA statute provides that, within 300 days of initiating an investigation, CBP "shall make a determination, based on substantial evidence{.}" 19 U.S.C. § 1517(c)(1)(A). Thus, this Court should reject Royal Brush's

contention that CBP engaged in a mistaken treatment of the "substantial evidence" standard.

Because CBP's evasion determination is based on substantial evidence, the trial court correctly sustained it. *See, e.g.*, *Downhole Pipe & Equipment, L.P.*, 776 F.3d at 1380.

## CONCLUSION

For these reasons, we respectfully request that the Court affirm the trial court's judgment.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

/s/ Antonia R. Soares
ANTONIA R. SOARES
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington D.C. 20044
(202) 305-7405
antonia.soares@usdoj.gov

June 9, 2022

Attorneys for Defendant-Appellee
United States

**CERTIFICATE PURSUANT TO RULE 32(A)(7)(C)**

I, Antonia R. Soares, a trial attorney in the Department of Justice, Civil Division, Commercial Litigation Branch, certify that this brief, which used Times New Roman font with 14 point type, contains 13,953 (relying upon the Microsoft Word word count feature of the word processing program used to prepare this principal brief) and complies with the type-volume limitation contained in Rule 32(a)(7)(B).

Antonia R. Soares
Antonia R. Soares

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 9th day of June, 2022, a copy of the foregoing BRIEF OF DEFENDANT-APPELLEE UNITED STATES was filed electronically.

__X__ This filing was served electronically to all parties by operation of the Court's electronic filing system.

____ A copy of this filing was served via:

____ hand delivery

____ mail

____ third-party commercial carrier for delivery within 3 days

____ electronic means, with the written consent of the party being served

To the following address:

/s/ Antonia R. Soares
Antonia R. Soares