2022-1226

# United States Court of Appeals
# for the Federal Circuit

**ROYAL BRUSH MANUFACTURING, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, DIXON TICONDEROGA COMPANY,**
*Defendants-Appellees*

Appeal from the United States Court of International Trade in No. 1:19-cv-00198-MAB, Judge Mark A. Barnett.

## NON-CONFIDENTIAL REPLY BRIEF OF PLAINTIFF-APPELLANT ROYAL BRUSH MANUFACTURING, INC.

STEVEN D. GORDON
RONALD A. OLEYNIK
Holland & Knight LLP
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
(202) 955-3000
*Counsel for Plaintiff-Appellant*

June 30, 2022

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... iii
STATEMENT REGARDING ORAL ARGUMENT ..... 1
ARGUMENT ..... 2
A. CUSTOMS WITHHELD EVIDENCE ON WHICH IT RELIED FROM ROYAL BRUSH, THEREBY DEPRIVING ROYAL BRUSH OF DUE PROCESS. ..... 3
1. This Court owes no deference to the agency's procedures. ..... 3
2. The due process argument is properly framed. ..... 5
3. There is no statutory impediment to providing the withheld information. ..... 6
4. Royal Brush is entitled to a new adjudication. ..... 8
B. CUSTOMS ERRED BY REJECTING ROYAL BRUSH'S REBUTTAL FILING. ..... 9
1. Both the Constitution and the agency's own regulation entitle Royal Brush to respond. ..... 12
2. The agency's construction of its regulation is arbitrary and not entitled to deference. ..... 13
3. The agency's construction of its regulation deprives Royal Brush of due process. ..... 14
4. Royal Brush is entitled to a new adjudication. ..... 16
C. CUSTOMS' FINDING OF EVASION IS ARBITRARY AND CAPRICIOUS. ..... 16
1. The agency improperly shifted the burden of proof. ..... 16
2. The agency drew arbitrary conclusions from the evidence. ..... 19
3. The agency applied the wrong standard of proof. ..... 22
4. The agency's errors require reversal. ..... 24
CONCLUSION ..... 25
CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS ..... 26
CERTIFICATE OF CONFIDENTIAL MATERIAL ..... 27
CERTIFICATE OF SERVICE ..... 28

## DESCRIPTION OF REDACTED CONFIDENTIAL MATERIAL PURSUANT TO FED. CIR. R. 25.1(E)(1)(B)

The material redacted on pages 11, 19, and 20 contains production capacity and volume information that is subject to the U.S. Court of International Trade's December 16, 2019, standing Protective Order.

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AmBuild Company, LLC v. United States*,
119 Fed. Cl. 10 (2014) .......... 16

*Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017) .......... 18

*Biestek v. Berryhill*,
139 S.Ct. 1148 (2019) .......... 23

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*,
701 F.3d 1367 (Fed. Cir. 2012) .......... 23, 24

*Consolidation Coal Co. v. United States*,
615 F.3d 1378 (Fed. Cir. 2010) .......... 15

*Creswell Trading Co. v. United States*,
15 F.3d 1054 (Fed. Cir. 1994) .......... 17

*Flyers Rights Educ. Fund, Inc. v. Fed. Aviation Admin.*,
864 F.3d 738 (D.C. Cir. 2017) .......... 9

*Gen. Dynamics Ordnance and Tactical Sys., Inc.*,
ASBCA Nos. 56870, 56957, 2010 WL 3119469 (June 1, 2010) .......... 8

*Hannah v. Larche*,
363 U.S. 420 (1960) .......... 4, 5

*Hudick v. Wilkie*,
755 F. App'x 998 (Fed. Cir. 2018) .......... 4, 13

*In re Kumar*,
418 F.3d 1361 (Fed. Cir. 2005) .......... 15

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .......... 5

*Nat'l Mining Ass'n v. Kempthorne*,
512 F.3d 702 (D.C. Cir. 2008) .......... 15

*NEC Corp. v. United States*,
151 F.3d 1361 (Fed. Cir. 1998) ....................................................................2

*Ohio Bell Tel. Co. v. Pub. Utils. Comm'n of Ohio*,
301 U.S. 292 (1937)...........................................................................................4

*PSC VSMPO-Avisma Corp. v. United States*,
688 F.3d 751 (Fed. Cir. 2012) ..................................................................3, 13, 14

*Pullman-Standard v. Swint*,
456 U.S. 273 (1982)..........................................................................................24

*Ramirez v. Dep't of Homeland Sec.*,
975 F.3d 1342 (Fed. Cir. 2020) ..............................................................5, 6, 9, 16

*Regency Air, LLC v. Dickson*,
3 F.4th 1157 (9th Cir. 2021) ...........................................................................14

*Rodriguez v. Dept. of Veterans Affs.*,
8 F.4th 1290 (Fed. Cir. 2021) ..........................................................................23

*Royal Brush Mfg., Inc. v. United States*,
483 F. Supp. 3d 1294 (Ct. Int'l Trade 2020) .......................................................2

*SL Serv., Inc. v. United States*,
357 F.3d 1358 (Fed. Cir. 2004) .......................................................................22

*Stone v. Fed. Deposit Ins. Corp.*,
179 F.3d 1368 (Fed. Cir. 1999) .......................................................................15

*Suramerica de Aleaciones Laminadas, C.A. v. United States*,
818 F. Supp. 348 (Ct. Int'l Trade 1993) ...........................................................20

*Ta Chen Stainless Steel Pipe v. United States*,
23 C.I.T. 804, 1999 WL 1001194 (Ct. Int'l Trade 1999)..................................18

*United States v. Fla. E. Coast Ry. Co.*,
410 U.S. 224 (1973)...........................................................................................4

*United States v. Waterhouse*,
1 U.S. Cust. App. 353 .........................................................................................22

*Ward v. United States Postal Serv.*,
634 F.3d 1274 (2011)....................12

*Wright v. Dep't of Transp.*,
900 F.2d 1541 (Fed. Cir. 1990) ....................17

**Statutes**

19 U.S.C. § 1517(c)(1)(A) ....................17, 21, 23

19 U.S.C. § 1517(c)(3)....................18

19 U.S.C. § 1517(g)(2)....................23

19 U.S.C. § 1517(g)(2)(B) ....................24

Contract Disputes Act, 41 U.S.C. §§ 601–613 ....................8

Trade Secrets Act, 18 U.S.C. § 1905 ....................7, 8

**Other Authorities**

19 C.F.R. § 165.23(c)(1) ....................12

*Certain Cased Pencils from the People's Republic of China*, 59 Fed.
Reg. 66,909 (Dep't Commerce Dec. 28, 1994) ....................21

*Certain Cased Pencils From the People's Republic of China*, 82 Fed.
Reg. 41,608 (Dep't Commerce Sept. 1, 2017) ....................21

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(1), Appellant Royal Brush Manufacturing, Inc. respectfully requests the Court schedule oral argument in this case.

## ARGUMENT

An importer is "entitled to procedural due process regarding the resolution of disputed facts involved in a case of foreign commerce when the importer faces a deprivation of 'life, liberty, or property' by the Federal Government." *NEC Corp. v. United States*, 151 F.3d 1361, 1370 (Fed. Cir. 1998). Thus, Royal Brush Manufacturing, Inc. ("Royal Brush") "has a procedural due process right to 'notice and a meaningful opportunity to be heard'" before it is subjected to hundreds of thousands of dollars in additional import duties. *Royal Brush Mfg., Inc. v. United States*, 483 F. Supp. 3d 1294, 1305 (Ct. Int'l Trade 2020). The agency ("Customs," "CBP," or the "agency") and defendant-intervener Dixon Ticonderoga Company ("Intervener" or "Dixon") contend that Royal Brush's due process rights are delimited by the agency's regulations and its construction of them, to which this Court should defer.[1] They are wrong.

Furthermore, the agency's determination that Royal Brush imported Chinese-origin pencils through evasion is arbitrary and capricious, and is not supported by substantial evidence.

---

[1] *See* Br. of Def.-Appellee United States at 27–45, June 9, 2022, ECF No. 29 ("Appellee Br."); Non-Conf. Br. Appellee [ Dixon ] at 26–43, June 9, 2022, ECF No. 27 ("Dixon Br."). The confidential version of Dixon's brief is reproduced at ECF No. 28 on the Court's docket. The arguments Royal Brush advances herein do not require citation to that version of Dixon's brief.

### A. Customs Withheld Evidence on Which It Relied from Royal Brush, Thereby Depriving Royal Brush of Due Process.

Customs' adjudicative process deprived Royal Brush of due process by denying it access to evidence – confidential business information – that the agency collected, placed on the record, and, ultimately, relied upon to make a finding of evasion. The agency and Intervener make a variety of futile arguments in an unsuccessful effort to dispute this conclusion.

#### 1. This Court owes no deference to the agency's procedures.

The agency argues that Royal Brush's due process challenge is "foreclosed" by this Court's decision in *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760-61 (Fed. Cir. 2012), which "recognized that courts should not intrude upon an agency's power to apply its own procedures for the timely resolution of administrative proceedings." Appellee Br. at 32–33. This contention does not withstand scrutiny.

The *PSC VSMPO-Avisma* decision applies the rule that, "'<u>[a]bsent constitutional constraints</u> or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.'" *PSC VSMPO-Avisma*, 688 F.3d at 760 (quoting *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 543–44 (1978)) (emphasis

added). That rule is inapplicable here because a constitutional constraint is at issue, i.e., whether the agency's procedures satisfy the dictates of due process.

Furthermore, due process imposes more exacting standards on administrative proceedings that adjudicate disputed facts than on those that promulgate policy-type standards or rules. *See United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 244–45 (1973). This case involves an adjudication and, when an agency omits "'procedures [that] would have provided protection against arbitrary and inaccurate adjudication, this Court has not hesitated to find the proceedings violative of due process.'" *Hudick v. Wilkie*, 755 F. App'x 998, 1007 (Fed. Cir. 2018) (quoting *Honda Motor Co. v. Oberg*, 512 U.S. 415, 430 (1994)).

The Supreme Court has ruled that, in an adjudication, an "agency [can] not, consistently with due process, act on the basis of undisclosed evidence that was never made a part of the record before the agency." *Fla. E. Coast Ry. Co.*, 410 U.S. at 245. An agency cannot adjudicate by "reporting its conclusion, but not the underlying proofs." *Ohio Bell Tel. Co. v. Pub. Utils. Comm'n of Ohio*, 301 U.S. 292, 300 (1937).

In contrast, the Court upheld an agency's rules of procedure that did not identify complainants or allow for cross-examination of witnesses where the agency did not adjudicate, i.e., "d[id] not hold trials or determine anyone's civil or criminal liability." *Hannah v. Larche*, 363 U.S. 420, 441 (1960). In so doing, however, the

Court cautioned, "when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process." *Id.* at 442. This case involves an adjudication and so the agency cannot withhold evidence from Royal Brush that it relies on to impose civil liability.

**2. The due process argument is properly framed.**

The agency and Intervener argue that Royal Brush's due process claim is somehow deficient because it is not couched in the three-factor rubric of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which balances (1) the private interest at stake; (2) the risk of error in the procedures used and the probable value of additional procedural safeguards; and (3) the Government's interest. Dixon also emphasizes that *Mathews* articulates a "flexible" standard of due process. These arguments fail because "one 'relatively immutable' principle of due process is that 'where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.'" *Ramirez v. Dep't of Homeland Sec.*, 975 F.3d 1342, 1350 (Fed. Cir. 2020) (quoting *Greene v. McElroy*, 360 U.S. 474, 496 (1959)). Royal Brush correctly

articulated its claim by invoking this "immutable principle" rather than the superfluous balancing test.

### 3. There is no statutory impediment to providing the withheld information.

The agency contends that "there is simply no legal basis on which Royal Brush can establish an entitlement through CBP to the Philippine Shipper's confidential business information"[2] because "[n]either the EAPA statute nor CBP's regulations permits, let alone requires, CBP to release confidential business information to Royal Brush." Appellee Br. at 34–35. This argument fails for two reasons.

First, the agency ignores that Royal Brush's claim is based on the Constitution, not the EAPA statute or the agency regulations. As the *Ramirez* court recognized, the obligation to provide a respondent with the evidence underlying an agency's determination "stems from more than its regulatory and contractual obligations . . . [r]ather, the minimum requirements are constitutional." *Ramirez*, 975 F.3d at 1351.

Second, the EAPA statute does not forbid the release of confidential business information. The statute is simply silent about the use of confidential information in adjudicating allegations of evasion. When Customs promulgated the

[2] The parties' filings refer to the foreign manufacturer as either the "Philippine Shipper" or the "Philippine Manufacturer."

implementing regulations, it could have provided for an administrative protective order ("APO") mechanism, but chose not to do so. The agency grudgingly concedes that this is true: "[w]hile the absence of statutory authorization may not necessarily preclude agencies from promulgating a regulation to govern an APO procedure, nor does statutory silence compel agencies to institute such a procedure." Appellee Br. at 31–32 (emphasis in the original). The agency's retort that statutory silence does not compel it to institute an APO procedure avoids the issue, which is whether the Constitution compels such a procedure, or a viable alternative, where an agency gathers and utilizes confidential business information in adjudicating a case.

Customs' professed inability to provide the information at issue here to Royal Brush is a problem of its own creation. The agency promulgated regulations that enable it to obtain and use confidential business information in an evasion proceeding but deny that information to the other parties. In short, Customs created adjudicatory procedures that deprive a respondent of due process. Customs cannot hide behind either the EAPA statute or its own regulations in defending itself against Royal Brush's constitutional claim.

For the same reason, Customs cannot invoke the Trade Secrets Act, 18 U.S.C. § 1905, to justify its unconstitutional adjudication procedures. That statute simply prohibits government employees from disclosing trade secrets to any extent "not authorized by law." It does not prohibit and, in fact, permits disclosure of authorized

discovery to a party in an administrative adjudication. *See Gen. Dynamics Ordnance and Tactical Sys., Inc.*, ASBCA Nos. 56870, 56957, 2010 WL 3119469 (June 1, 2010). Customs argues that both the Contract Disputes Act, 41 U.S.C. §§ 601–613, and the Armed Services Board of Contract Appeals (ABSCA)'s rules enable that tribunal to issue APOs. But, had Customs provided for an APO procedure in its regulations, then its disclosure of confidential business information pursuant to such orders would also be "authorized by law" and so beyond the ambit of the Trade Secrets Act.

**4. Royal Brush is entitled to a new adjudication.**

Even if there were some legal prohibition on Customs disclosing the evidence at issue to Royal Brush – which there is not – its due process claim would remain valid. The Constitution forbids the use of secret evidence to adjudicate the allegation of evasion against Royal Brush. Thus, if the agency cannot disclose certain evidence to Royal Brush, then it cannot rely on that evidence.

One way or the other, Royal Brush is entitled to a new proceeding before the agency at which it receives access to – and can respond to – all of the evidence that the agency considers. Either Royal Brush must be given access to the confidential business information or else Customs cannot utilize that information in rendering its decision.

Finally, the agency contends that Royal Brush failed to show that lack of access to the withheld information caused it prejudice. This argument flies in the face of both the law and the facts. As a matter of law, when a party to an administrative adjudication is denied its due process right to review and challenge the evidence against it, the proper remedy is vacatur and "remand[ ] to provide [the party] with the process [it] was owed." *Ramirez*, 975 F.3d at 1352.

Royal Brush plainly was prejudiced by Customs' refusal to disclose the critical evidence at issue here. Royal Brush could not challenge, or meaningfully respond to, Customs' calculations regarding the Philippine Manufacturer's overall production capacity without knowing what the figures were and how they were derived. Nor could Royal Brush respond to, or challenge, the findings made by the Customs Attaché during his site visit without access to the photographs that the Attaché took to document his observations. Just as a court "cannot affirm the sufficiency of [agency evidence that it] cannot see," *Flyers Rights Educ. Fund, Inc. v. Fed. Aviation Admin.*, 864 F.3d 738, 746 (D.C. Cir. 2017), a respondent cannot defend itself against evidence it cannot see. It is nonsense to contend that Royal Brush was not prejudiced by having to defend itself while blindfolded by the agency.

**B. Customs Erred By Rejecting Royal Brush's Rebuttal Filing.**

Customs also deprived Royal Brush of its due process right to notice and a meaningful opportunity to be heard by rejecting Royal Brush's submission about the

Philippine Manufacturer's overall production capacity, a new issue that first arose in the Verification Report.[3] Theretofore, the agency's investigation focused on whether the Philippine Manufacturer had sufficient capacity, raw materials, and staff to produce Royal Brush's seven orders. Customs did not seek data about the Philippine Manufacturer's overall production capacity. Likewise, Customs' agenda for the Site Verification announced that "[v]erification will be made of merchandise contained on specific invoices[,]" each of which were connected to Royal Brush's orders. *See* Appx000204. Indeed, Customs reiterated in its determination on appeal that the purpose of the verification "was to determine whether the Philippine supplier could show that it was capable of producing the amount of pencils allegedly manufactured for Royal Brush, as well as to clarify the country of origin for pencils imported by Royal Brush." Appx000084.

The agency contends that "all entries [into the U.S.] from the Philippine Shipper were placed on the record during the investigation" and so "analysis of this information in the Verification Report does not qualify . . . as 'new factual information.'" Appellee Br. at 50. This contention is disingenuous because the

[3] This argument is related to, but distinct from, the argument made in the preceding section. The submission that Royal Brush made in response to the verification report was improperly constrained because the agency's calculations of the Philippine Manufacturer's production capacity were withheld from Royal Brush. But, even had those calculations been provided, the agency's refusal to accept any response from Royal Brush was a distinct denial of its due process rights.

document on which Customs relies was redacted; it indicated only that it contained unspecified "Import Data" and, otherwise, the "Document [Was] Not Capable of Not [sic] Summary[.]" *See* Appx000215.[4] This redacted document did not provide Royal Brush any notice whatsoever that the Philippine Manufacturer's overall production capacity and total entries into the U.S. were at issue.

During the verification process, Customs changed course and decided to analyze the Philippine Manufacturer's overall production capacity by extrapolating from the information produced about Royal Brush's orders (although those orders constituted less than [ **Redacted: Production Capacity Information** ] percent of the merchandise the Manufacturer is capable of producing, based on the agency's calculations). Customs treated these calculations as findings of "trained CBP auditors" which carried the "weight of [ ] evidence." Appx000086. The agency relied on these calculations to conclude that the production capacity of the Philippine Manufacturer was "far less" than its total shipments to the United States in 2018. Appx000087.

[4] Customs has not identified the document that supposedly shows all of the Philippine Manufacturer's entries. Royal Brush understands the agency to be referring to this "NTAG Import Data" document, which the agency cites elsewhere in its remand redetermination for a similar proposition. *See*, *e.g.*, Appx000024. Customs placed this redacted data on the record before formally initiating the investigation, and then ignored it. The agency did not cite this data to support its final determination or its administrative determination on appeal. The document laid dormant until the CIT asked Customs to explain why calculations of the Philippine Manufacturer's overall production capacity do not constitute "new factual information." Then, the agency dug up this document and began to cite it.

Customs initially acknowledged that the Verification Report contained new factual information to which Royal Brush was entitled to respond, but subsequently reversed its position and rejected Royal Brush's submittal.

### 1. Both the Constitution and the agency's own regulation entitle Royal Brush to respond.

As a matter of due process, Royal Brush was entitled to "notice 'both of the charges and of the . . . evidence' and an 'opportunity to respond.'" *Ward v. United States Postal Serv.*, 634 F.3d 1274, 1279 (2011) (quoting *Stone v. Fed. Deposit Ins. Corp.*, 179 F.3d 1368, 1374–76 (Fed. Cir. 1999). Consonant with this constitutional requirement, the agency's regulations permit a response when "new factual information" is placed in the administrative record. 19 C.F.R. § 165.23(c)(1). Thus, Royal Brush had both a constitutional and a regulatory right to respond to new evidence.

Customs attempts to portray the issue here as solely a regulatory matter. It argues the Court should defer to Customs' interpretation of its own regulations, and the Court should not "improperly intrude" upon Customs' authority to apply its own procedures for the timely resolution of evasion proceedings. Appellee Br. at 48 (citing *PSC VSMPO-Avisma*, 688 F.3d at 761). Both of these arguments are flawed.

The agency's need to timely resolve its proceedings does not enable it to circumscribe Royal Brush's due process rights. Nor does this Court, in evaluating Royal Brush's due process claim, owe any deference to the agency's application of

its own procedures. Rather, the Court enforces "the guarantee of procedural fairness provided by the Due Process Clause." *Hudick*, 755 F. App'x at 1007. Thus, if an agency omits "'procedures [that] would have provided protection against arbitrary and inaccurate adjudication, this Court has not hesitated to find the proceedings violative of due process.'" *Id.* (quoting *Honda Motor Co.*, 512 U.S. at 430).

Customs' regulation, on its face, affords due process by providing an opportunity to respond whenever "new factual information" is placed in the record. The issue here is whether the agency's application of this regulation to Royal Brush is reasonable and complies with constitutional requirements. It does not pass either test.

**2. The agency's construction of its regulation is arbitrary and not entitled to deference.**

The agency's construction of "new factual information" is unreasonable. It conflicts with the interpretation of "factual information" that this Court upheld in *PSC VSMPO-Avisma*, i.e., that "expert opinion analyzing reported information [already in the record] clearly assumes the weight of evidence and, as such, amounts to [d]ata or statements of fact in support of allegations, i.e., <u>factual information</u>." *PSC VSMPO-Avisma*, 688 F.3d at 760 (emphasis added) (internal quotations omitted).[5] The Court reasoned that such expert analysis was intended as additional

[5] Intervener contends that calculations and analysis made from the record do not constitute new factual information, citing *Coal. for Pres. of Am. Brake Drum &*

"evidence," not mere "argumentation." *Id.* The same is true here.[6] Customs treated the calculations in the Verification Report as "findings" of "trained CBP auditors" which carried the "weight of [ ] evidence," and on which the agency relied in its decision. Appx000086. Thus, these calculations were "new factual information" that was added to the administrative record in the Verification Report. The agency's contrary construction is unreasonable and should be rejected on that ground alone.

### 3. The agency's construction of its regulation deprives Royal Brush of due process.

The second, and more fundamental, reason for rejecting the agency's construction is that it violates Royal Brush's constitutional right to due process. "[A]n agency violates due process if it 'change[s] theories in midstream without giving respondents reasonable notice of the change.'" *Regency Air, LLC v. Dickson*,

---

*Rotor Aftermkt. Mfrs. v. United States*, 44 F. Supp. 2d 229, 241 (Ct. Int'l Trade 1999). Dixon Br. at 37. But this case actually stands for the opposite proposition, and was cited by this Court to support the conclusion that "expert opinion analyzing reported information 'clearly assumes the weight of evidence' and, as such, amounts to '[d]ata or statements of fact in support of allegations,' i.e., factual information." *See PSC VSMPO-Avisma*, 688 F.3d at 760.

[6] *PSC VSMPO-Avisma* held that, because the expert analysis of data already in the record constituted new factual information, it was properly excluded by the agency as untimely. The Court also rejected appellant's due process claim that it was entitled to offer such new evidence, holding that "Avisma was well aware throughout the review … that Commerce was considering using the accounting methodology ultimately adopted" and "had the opportunity to put forth evidence supporting its proposed accounting methodology but failed to do so." *PSC VSMPO-Avisma*, 688 F.3d at 762. Those facts are the polar opposite of what happened here.

3 F.4th 1157, 1162 (9th Cir. 2021) (quoting *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1324 (Fed. Cir. 2017)). "Procedural due process guarantees are not met if the [respondent] has notice only of certain charges or portions of the evidence and the deciding official considers new and material information." *Stone*, 179 F.3d at 1376.

Here, at the tail end of the investigation, Customs shifted the inquiry from whether the Philippine Manufacturer could produce Royal Brush's orders to whether it could produce all of the pencils it exported to the U.S. that year. Because the agency's calculations of the Manufacturer's overall production capacity clearly were "new and material information," Royal Brush was entitled to respond to them as a matter of due process. This conclusion is squarely supported by the decision in *In re Kumar*, 418 F.3d 1361, 1367 (Fed. Cir. 2005), which held that a respondent was "entitled to respond" to calculations relied upon by the Board of Patent Appeals that appeared for the first time in its decision.

Customs' interpretation of "new factual information" is not entitled to any deference because a constitutional requirement is at stake. This Court construes regulations to avoid creating a constitutional issue, *see Consolidation Coal Co. v. United States*, 615 F.3d 1378, 1382 (Fed. Cir. 2010), and the "canon of constitutional avoidance trumps *Chevron* deference." *Nat'l Mining Ass'n v. Kempthorne,* 512 F.3d 702, 711 (D.C. Cir. 2008). Customs' regulation must be construed so as to satisfy

due process by permitting Royal Brush to respond to the Verification Report. *See AmBuild Company, LLC v. United States*, 119 Fed. Cl. 10, 22 (2014) (rejecting an agency's interpretation of a regulation that would "abrogate the requirements of procedural due process.").

**4. Royal Brush is entitled to a new adjudication.**

Both the Constitution and the agency's own regulation (properly construed) entitled Royal Brush to respond to the new factual information in the Verification Report – the calculations and the conclusion that the Philippine Manufacturer lacked the capacity to produce all of the pencils it exported to the U.S. in 2018. Customs wrongfully denied Royal Brush the opportunity to do so. Accordingly, the agency decision "must be vacated, and the case remanded to provide [Royal Brush] with the process [it] was owed." *Ramirez*, 975 F.3d at 1352.

**C. Customs' Finding of Evasion is Arbitrary and Capricious.**

Finally, Customs' decision that all of the pencils Royal Brush imported from the Philippine Manufacturer entered the U.S. through evasion is arbitrary and capricious, and is not supported by substantial evidence. There are several, interrelated flaws in the agency's analysis.

**1. The agency improperly shifted the burden of proof.**

The EAPA statute requires Customs to "make a determination, based on substantial evidence, with respect to whether such covered merchandise was entered

into the customs territory of the United States through evasion." 19 U.S.C. § 1517(c)(1)(A). This language "sets forth on its face a statutory condition that [the agency] must establish before it may [take action] against an investigated party …." *Creswell Trading Co. v. United States*, 15 F.3d 1054, 1060 (Fed. Cir. 1994). The ultimate burden of proof is upon the agency to establish that this statutory condition – evasion – occurred. *See id.*

Accordingly, Customs bore the burden to prove that the pencils at issue were made in China. Instead, the agency improperly shifted the burden to Royal Brush (and the Philippine Manufacturer) to prove that the pencils were made in the Philippines. *See* Appx000086 ("opportunities were afforded to Royal Brush, as well as to the Philippine supplier, to prove their claims of production, notwithstanding, both entities fell short to establish the production capabilities of the Philippines entity."). Misplacing the burden of proof is "an egregious error of law." *Wright v. Dep't of Transp.*, 900 F.2d 1541, 1545 (Fed. Cir. 1990).

The agency suggests that it merely shifted the burden of production to the party in possession of the necessary information. But Royal Brush lacked access to the Philippine Manufacturer's records. Nor did Customs ever ask the Manufacturer to produce evidence of its overall production capacity. To the contrary, it advised the Manufacturer that it wanted to verify the merchandise contained on invoices connected to Royal Brush. *See* Appx000204. Customs was not satisfied with the

documentation that the Manufacturer produced, and so decided to extrapolate the Manufacturer's overall production capacity from the documents relating to Royal Brush's orders. This exercise was not a shifting of the burden of production.

"If [Customs] wishe[d] to place the full burden … on the respondent, at a minimum it must make that clear …." *Ta Chen Stainless Steel Pipe v. United States*, 23 C.I.T. 804, 1999 WL 1001194, at *14 (Ct. Int'l Trade 1999). And, once Royal Brush (or the Philippine Manufacturer) was placed on notice regarding its burden, it must be afforded an opportunity to proffer evidence relating to that issue. *See Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*, 876 F.3d 1350, 1369 (Fed. Cir. 2017). Here, neither of those things happened.

Nor did Customs simply draw an adverse inference against a party that fails to cooperate to the best of its ability to provide requested information. *See* 19 U.S.C. § 1517(c)(3). Rather, Customs asserted that the record – i.e., the inability of Royal Brush and the Philippine Manufacturer to prove the pencils were made in the Philippines – established evasion without resort to any adverse inference. Appx000088. The agency's improper shift of the burden of proof was distinct from any adverse inference.[7]

---

[7] The agency did find that "adverse inferences were warranted, inasmuch as the importer as well as the alleged foreign producer and exporter, failed to provide sufficient evidence to demonstrate that the pencils imported by Royal Brush were manufactured in the Philippines." Appx000088 (emphasis in the original). This finding simply replicated the agency's evaluation of the record without the inference,

### 2. The agency drew arbitrary conclusions from the evidence.

Further, Customs drew arbitrary conclusions from the evidence before it. The agency described the "central issue" as "whether the Philippine manufacturer could sustain sufficient pencil production commensurate to the quantities of Royal Brush's imports to the United States and whether production records could be tied to Royal Brush's imports." Appx000086. These were the two questions the verification team sought to answer.

The answer to the first question was yes – Royal Brush's imports constituted a mere fraction of **Redacted: Production Capacity Volume** [ ] percent of the Philippine Manufacturer's production capacity as calculated by the verification team. Customs was not satisfied, however, that Royal Brush's imports were sufficiently tied to the Philippine Manufacturer's production records. Appx000086 ("The production in the Philippines for Royal brush's imports remains unsubstantiated …."). So the verification team expanded its inquiry to examine whether the Manufacturer "had sufficient manufacturing capabilities to produce all of the pencils [imported to the U.S.] during the period at issue." Appx000088. If so, the agency presumably would find that Royal Brush's imports were not Chinese pencils that entered through evasion.

---

by shifting the burden of proof. The agency did not consider whether Royal Brush or the Philippine Manufacturer had cooperated to the best of their ability, which is the statutory predicate for drawing an adverse inference. In any event, the adverse inference issue is not before this Court because the CIT did not address it. Appx000012-000013.

The verification team calculated the Philippine Manufacturer had the capacity

**Redacted (both terms): Production Capacity Volume**

to produce [ ] (essentially [ ]) of all the pencils it shipped to the U.S. in 2018.[8] Appx001202. Based on these calculations, the agency determined that "<u>entries</u> made by Royal Brush were declared as of Philippine origin but actually <u>included</u> covered pencils from China." Appx000088 (emphasis added).

The agency's conclusion was arbitrary because its calculations create only the possibility – not the probability – that a given shipment of pencils to the U.S. was not manufactured in the Philippines.[9] Indeed, the verification team's findings show

**Redacted: Production Capacity Information**

that it is twice as likely (a [ ] chance) that the pencils purchased by Royal Brush

**Redacted: Production Capacity Information**

were manufactured by the Philippine Manufacturer than that they were not (a [ ] chance). The other evidence before the agency did not alter this calculus or demonstrate that Royal Brush's pencils were made in China. Yet Customs used these figures to conclude that some pencils from China were included in each of Royal Brush's entries – an arbitrary assumption – and then treated those entries as though <u>all</u> the pencils were of Chinese origin.

---

[8] Of course, had Royal Brush and the Philippine Manufacturer been afforded an opportunity to address the Manufacturer's production capacity, they might have demonstrated that it is higher than what the verification team calculated from the tiny sample it used.

[9] A mere possibility does not constitute substantial evidence. *See Suramerica de Aleaciones Laminadas, C.A. v. United States*, 818 F. Supp. 348, 373 (Ct. Int'l Trade 1993).

Even if Customs could properly infer from this evidence that any pencils not produced by the Philippine Manufacturer were Chinese, and that those Chinese pencils were spread throughout the Manufacturer's shipments to the U.S., the agency's evasion finding was still arbitrary because it treated all of the pencils imported by Royal Brush -- rather than only a portion -- as though they were Chinese. The agency improperly framed the issue as whether Royal Brush's entries included covered pencils from China rather than whether (and, if so, to what extent), the pencils imported by Royal Brush were made in China. *See* Appx000088.

The statute provides that Customs is to determine "whether … covered merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(c)(1)(A) (emphasis added). In this case, the "covered merchandise" was "pencils from the Peoples Republic of China."[10] Customs lacks authority to expand the scope of the applicable antidumping order and apply it to non-Chinese pencils that are imported together with pencils from China.

The issue of dutiable goods being mixed with non-dutiable goods is not novel. The longstanding rule is that "a definite duty having been fixed by law on a definite article, it is extremely doubtful whether mere administrative practice in the absence

[10] *See Certain Cased Pencils from the People's Republic of China*, 59 Fed. Reg. 66,909 (Dep't Commerce Dec. 28, 1994) (antidumping duty order); *Certain Cased Pencils From the People's Republic of China*, 82 Fed. Reg. 41,608 (Dep't Commerce Sept. 1, 2017) (continuation of antidumping duty order).

of statutory authority can attach to it a higher rate simply because it is mixed with other merchandise from which it is admittedly separable and for which separation the law itself seems to have made provision." *United States v. Waterhouse*, T.D. 31,452, 1 U.S. Cust. App. 353, 359 (Ct. Cust. 1911).

Where merchandise carrying different rates of duty cannot be segregated, the courts have permitted an apportionment for purposes of imposing a countervailing duty. *See id.* Likewise, this Court upheld the apportioning of dry-docking expenses incurred by the vessel owner in a foreign country between dutiable repairs and non-dutiable inspections when imposing duties on those expenses. The Court noted that imposing a duty on the <u>entire cost</u> of dry-docking, rather than only that portion that is fairly attributable to dutiable repairs, "would exceed the mandate of the statute." *SL Serv., Inc. v. United States*, 357 F.3d 1358, 1362 (Fed. Cir. 2004). Customs arbitrarily ignored these limitations in this case.

**3. The agency applied the wrong standard of proof.**

A final defect in the agency's analysis is that Customs treated "substantial evidence" as the applicable burden of proof. *See* Appx000087. This Court recently concluded that "using substantial evidence as the burden of proof [is] . . . contrary to the well-established principle that preponderance of the evidence is the minimal appropriate burden of proof in administrative proceedings." *Rodriguez v. Dept. of Veterans Affs.*, 8 F.4th 1290, 1301 (Fed. Cir. 2021). Only in exceptional

circumstances – such as approving top-secret clearances -- might a lower burden of proof legitimately be applied, but such exceptions will be rare. *See id*.

Customs insists that EAPA proceedings are an exception to this rule because the statute provides that the agency "shall make a determination, based on substantial evidence . . . ." 19 U.S.C. § 1517(c)(1)(A); Appellee Br. at 55. But, "[t]he phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (emphasis added). Thus, the statutory reference to "substantial evidence" establishes the standard of judicial review for the agency's factual determinations rather than the agency's burden of proof. *See Rodriguez,* 8 F.4th at 1298. This conclusion is buttressed by the fact that the "judicial review" subsection of the statute specifies the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard, but is silent about "substantial evidence." *See* 19 U.S.C. § 1517(g)(2). As this Court has explained, "the substantial evidence standard applies to review of factual determinations" but "the agency's reasoning … is reviewed under the arbitrary and capricious (or contrary to law) standard." *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012). Thus, it is logical that the statute includes both standards.

### 4. The agency's errors require reversal.

The agency argues incorrectly that Royal Brush is simply asking the Court to re-weigh the evidence. This is not so. Shifting the burden of proof and applying the wrong standard of proof are errors of law. Although both may affect the weighing of the evidence, they stand apart from the fact-finding process. "[W]here findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue." *Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982).

Nor does Royal Brush ask the Court to re-weigh the evidence by contending that the agency's finding of evasion is arbitrary and contrary to law. Rather, its claim is that Customs drew arbitrary and unsupported inferences from the evidence that the agency deemed credible. As discussed above, this case involves a challenge to "the agency's reasoning" rather than a challenge to whether there is enough evidence in the record to support the agency's factual determinations. *See Changzhou Wujin*, 701 F.3d at 1377. Where the agency's reasoning is faulty, its decision must be set aside. *See id.* at 1379; 19 U.S.C. § 1517(g)(2)(B) (this Court must set aside "any determination, finding, or conclusion [that] is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

## CONCLUSION

As Royal Brush noted in its opening brief, the EAPA is a relatively new statute and the case at bar, evidently, is the first time Customs' procedures are being subjected to judicial scrutiny Those procedures are badly in need of correction because they blatantly deprive a respondent of due process. Here, crucial evidence on which the agency relied was withheld from Royal Brush because the agency has made no provision for sharing confidential business information with respondents. Further, the agency arbitrarily denied Royal Brush an opportunity to respond to new factual information placed on the record during the verification process. Finally, Customs' finding of evasion is arbitrary because the agency applied the wrong standard of proof and improperly shifted the burden of proof, and because the evidence fails to establish that any – and certainly not all -- of the pencils imported by Royal Brush were of Chinese origin. Accordingly, the decisions of the court below and Customs should be reversed.

Dated: June 30, 2022

Respectfully submitted,

/s/ Steven D. Gordon

Steven D. Gordon
Ronald A. Oleynik
Holland & Knight LLP
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 955-3000
Facsimile: (202) 955-5564
Steven.Gordon@hklaw.com
Ron.Oleynik@hklaw.com
*Attorneys for Appellant Royal Brush Manufacturing, Inc.*

**FORM 19. Certificate of Compliance with Type-Volume Limitations** **Form 19**
**July 2020**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 22-1226

**Short Case Caption:** Royal Brush Manufacturing, Inc. v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 5,709 words.

- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.

- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 06/30/2022

Signature: /s/ Steven D. Gordon

Name: Steven D. Gordon

FORM 31. Certificate of Confidential Material

Form 31
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 22-1226

**Short Case Caption:** Royal Brush Manufacturing, Inc. v. US

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).
- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains 4 number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 06/30/2022

Signature: /s/ Steven D. Gordon

Name: Steven D. Gordon

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2022, a true and correct copy of the foregoing was served upon counsel of record via email through the U.S. Court of Appeals for the Federal Circuit's CM/ECF system.

/s/ Steven D. Gordon