# United States Court of Appeals for the Federal Circuit

---

**ROYAL BRUSH MANUFACTURING, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, DIXON TICONDEROGA COMPANY,**
*Defendants-Appellees*

---

2022-1226

---

Appeal from the United States Court of International Trade in No. 1:19-cv-00198-MAB, Chief Judge Mark A. Barnett.

---

Decided: July 27, 2023

---

STEVEN D. GORDON, Holland & Knight LLP, Washington, DC, argued for plaintiff-appellant. Also represented by RONALD ALAN OLEYNIK.

MARGARET JANTZEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY, ANTONIA RAMOS SOARES.

FELICIA LEBORGNE NOWELS, Akerman LLP,

Tallahassee, FL, argued for defendant-appellee Dixon Ticonderoga Company. Also represented by MICHAEL J. LARSON; JULIA PADIERNA-PERALTA, Washington, DC.

---

Before LOURIE, DYK, and STOLL, *Circuit Judges*.

DYK, *Circuit Judge*.

Royal Brush Manufacturing Inc. ("Royal Brush"), an importer of pencils, was accused of transshipping pencils from China through the Philippines to avoid antidumping duties assessed on pencils of Chinese origin. Customs and Border Patrol ("CBP") found that the pencils had been transshipped. It based this finding in part on evidence that had not been supplied to Royal Brush because it was confidential business information. Royal Brush was also denied the opportunity to rebut this evidence.

We hold that we have jurisdiction and that the failure to provide access to the redacted information was a violation of due process. Under the applicable CBP regulation, Royal Brush must be given an opportunity to rebut this information with its own evidence.

## BACKGROUND

This case concerns five entries of pencils that Royal Brush imported to the United States between 2017 and 2018. On February 27, 2018, Dixon Ticonderoga Company ("Dixon"), a competing importer of pencils, filed a complaint with CBP alleging evasion by Royal Brush of antidumping duties under the Enforce and Protect Act of 2015 ("EAPA"), Pub. L. No. 114-125, 130 Stat. 155 (codified in scattered sections of 19 U.S.C.), 19 U.S.C. § 1517, and the related regulation, 19 C.F.R. Part 165. Dixon alleged that Royal Brush was transshipping pencils from China through the Philippines, falsely claiming the pencils to be of Philippine origin and thus not subject to the antidumping duties assessed on certain pencils from China.

CBP initiated an investigation on March 27, 2018, and a CBP attaché conducted a site visit to Royal Brush's Philippines manufacturer, the entity Royal Brush alleged had been producing the pencils that it imported. The attaché took photographs of and inside the facility and, in his report, wrote that "[t]he pictures and captions provided in this report indicate a clear story line of repacked Chinese pencils bound for the United States in boxes labeled, Made in the Philippines." J.A. 175. CBP only provided Royal Brush with the public version of the report which redacted all of the photographs.

CBP then commenced a formal investigation to determine whether Royal Brush was evading antidumping duties. CBP issued a notice of investigation to Royal Brush in a letter dated June 26, 2018. The letter stated that "CBP will . . . suspend the liquidation for any entry that has entered on or after March 27, 2018, the date of initiation of this investigation; and, CBP will extend the liquidation period for all unliquidated entries that entered before that date." J.A. 776. Such liquidation suspension was mandated by 19 U.S.C. § 1517(e) and 19 C.F.R. § 165.24(b)(1).

In November 2018, CBP conducted a verification site visit to the Philippines manufacturer. The resulting Verification Report concluded that the Philippines manufacturer did not have the capability to produce sufficient quantities of pencils to account for the total number of pencils imported to the United States in 2018. CBP provided only a redacted version of the report to Royal Brush which included neither the numbers used to calculate production capability and capacity nor the final production capability and capacity determinations. The redacted version also omitted other confidential business information,[1] such as

---

[1] Confidential business information is defined by regulation as information "consist[ing] of trade secrets and commercial or financial information obtained from any

photographs of the facility and information about certain invoices and purchase orders.[2]

Royal Brush sought to file a rebuttal to the Verification Report. Because the Verification Report was submitted more than 200 days after the investigation was initiated, a rebuttal would only have been proper if the Verification Report contained "new factual information." 19 C.F.R. § 165.23(c)(1). CBP at first indicated that this rebuttal was allowed but ultimately rejected the rebuttal because CBP determined that the verification report did not, in fact, contain new factual information. CBP only accepted Royal Brush's written arguments in response to the Verification Report. Royal Brush was denied the opportunity to submit rebuttal evidence.

On May 6, 2019, CBP issued a final affirmative determination of evasion and noted that it would continue to suspend liquidation of entries. The evasion determination was upheld on *de novo* administrative review by the CBP's Office of Trade, Regulations, and Rulings.

On November 6, 2019, Royal Brush appealed to the U.S. Court of International Trade ("CIT"), and soon thereafter moved to enjoin liquidation throughout the pendency of the case. The CIT granted the motion to enjoin liquidation on November 27, 2019, and later remanded the

---

person, which is privileged or confidential in accordance with 5 U.S.C. 552(b)(4)." 19 C.F.R. § 165.4(a). 5 U.S.C. § 552(b)(4) covers "trade secrets and commercial or financial information obtained from a person and privileged or confidential."

[2] Counsel for Royal Brush was provided with unredacted copies of the Attaché Report and Verification Report in later proceedings at the CIT pursuant to a CIT protective order. This information was not available to Royal Brush during the CBP proceedings.

proceeding to CBP requiring CBP to provide summaries of the redacted information, as required by 19 C.F.R. § 165.4(e), and to reconsider the denial of the opportunity to rebut. The CIT did "not hold that Royal Brush is entitled to receive business confidential information" and noted that "Congress has not mandated that Royal Brush be afforded such access and Royal Brush has not shown that due process requires it." J.A. 81.

On remand, CBP issued public summary versions of the Attaché Report and the Verification Report to Royal Brush. The photographs in the Attaché Report were replaced with generic descriptions such as "photo of sign," "photo of a different sign," and "photo of labeled box with finished merchandise." J.A. 1375–84. The summaries in the Verification Report replaced all numbers associated with production capability and capacity with either "number" or "no." According to CBP:

> CBP's remand proceeding complied with the Court's Remand Order. The EAPA statute and applicable regulations do not provide for a mechanism, such as an administrative protective order . . ., for disclosure of confidential business information to interested parties. As such, CBP is not authorized to disclose business confidential information to interested parties or their authorized representatives.

J.A. 36 (footnote omitted).

As to the rebuttal issue, CBP "continue[d] to find that the Verification Report d[id] not contain new factual information" and rejected Royal Brush's rebuttal submission. J.A. 18. Specifically, CBP found that the calculations in the Verification Report were "simply CBP using and verifying the factual data on the record and therefore [were] a natural part of CBP's investigation as to whether evasion occurred." J.A. 26.

Royal Brush appealed again to the CIT, arguing that the public summaries were insufficient; that the failure to provide the unredacted information deprived Royal Brush of due process; that the Verification Report contained new information that it should be allowed to rebut; and that the CBP determination was arbitrary and capricious and not supported by substantial evidence.[3] The CIT held that "CBP has complied with 19 C.F.R. § 165.4 by providing necessary public summaries of the confidential information and that Royal Brush has not established that CBP has failed to provide Royal Brush the process that it is due." J.A. 9–10. The CIT also sustained CBP's decision to reject Royal Brush's rebuttal submission and upheld the evasion determination, concluding that it was not arbitrary and was supported by substantial evidence.

Royal Brush appealed to this court pursuant to 28 U.S.C. § 1295(a)(5). Around December 2021, after Royal Brush filed this appeal, the government informed Royal Brush that, contrary to the EAPA, 19 U.S.C. § 1517(d)(1)(A)(i), (e)(1), CBP's own regulations, 19 C.F.R. §§ 165.24(b)(1)(i), 165.28(a)(1)(i)–(ii), and CBP's previous representations in its initiation of investigation and final evasion determination, all five of Royal Brush's entries had been liquidated. All of these five entries had been liquidated before the injunction, and the first had been liquidated even before Dixon's transshipping complaint. At liquidation, antidumping duties were assessed on the last two entries but not on the first three.

---

[3] Royal Brush also challenged CBP's use of adverse inferences in the evasion determination proceedings at the CIT. The CIT held that this issue was moot, and Royal Brush does not raise it on appeal.

Because the entries had been liquidated, the United States moved to dismiss this case for lack of jurisdiction. That motion was referred to the merits panel.

## DISCUSSION

### I. Jurisdiction

Congress, concerned with evasion of antidumping duties, on February 24, 2016, enacted the EAPA, a statutory scheme for determining whether "covered merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(c)(1)(A). Evasion proceedings begin with an allegation or referral to CBP. 19 U.S.C. § 1517(b)(1). Then, CBP has 15 business days to "initiate an investigation if [CBP] determines that the information provided in the allegation or the referral . . . reasonably suggests that covered merchandise has been entered into the customs territory of the United States through evasion." *Id.* After initiation, CBP generally has 300 days to make an evasion determination based on substantial evidence. *Id.* § 1517(c)(1)(A). Finally, after CBP makes its evasion determination, an entity deemed to have evaded duties has 30 days to seek administrative review by "appeal[ing] . . . for de novo review of the determination." *Id.* § 1517(f)(1).

When the administrative proceedings are complete, the entity that imported the covered merchandise can seek judicial review in the CIT "to determine whether the [evasion] determination and [administrative] review [was] conducted in accordance" with statutory provisions. *Id.* § 1517(g)(1). Our court has jurisdiction over "an appeal from a final decision of the [CIT]." 28 U.S.C. § 1295(a)(5). It is undisputed that Royal Brush timely sought administrative review and judicial review of the evasion determination pursuant to those provisions.

Nevertheless, the government argues that we do not have jurisdiction because Royal Brush failed to protest the

liquidations within the statutory time period. The government notes that under 19 U.S.C. § 1514(c)(3)(A), a provision separate from the EAPA, if a party wishes to protest the liquidation of an entry, it must do so within 180 days of the liquidation. Failure to file a protest renders the liquidation "final and conclusive upon all persons (including the United States and any officer thereof)." 19 U.S.C. § 1514(a). Royal Brush did not timely file such a protest.

We have held that "once liquidation occurs the trial court is powerless to order the assessment of duties at any different rate." *SKF USA, Inc. v. United States*, 512 F.3d 1326, 1328 (Fed. Cir. 2008); *see also Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983). Because courts are powerless to change the assessment of duties, we have held that cases seeking a change in duties after liquidation are moot. *SFK*, 512 F.3d at 1329. The government argues that this line of cases applies to cases involving the EAPA, such as this one.

The government misconstrues the nature of this proceeding. Royal Brush did not bring a challenge to a liquidation determination; it brought a challenge to an evasion determination pursuant to the statute specifically authorizing such challenges. That statute does not require a liquidation protest as a condition of review. Indeed, Royal Brush had nothing to protest in the liquidation determinations of its first three entries because Royal Brush was not assessed any antidumping duties.[4]

---

[4] Pauline Garcia, a CBP employee with the ability to review liquidation data in CBP's database, confirmed that "CBP did not assess antidumping duties on th[ese] entr[ies]" in her declaration supporting the government's motion to dismiss. Def.-Appellee the United States' Mot. to Dismiss for Lack of Jurisdiction Ex. A ¶¶ 5–7, ECF No. 62.

At least as to these three entries it is clear that the case is not moot. Apart from the possibility that CBP might successfully seek reliquidation of the entries, the evasion determination makes Royal Brush potentially liable for civil penalties, *see* 19 U.S.C. § 1517(h), including a "penalty in an amount not to exceed the domestic value of the merchandise," *id.* § 1592(c)(1). *See id.* § 1592(a)–(c) (noting that civil penalties can be assessed for fraudulently or negligently introducing merchandise into the United States by means of "any document or electronically transmitted data or information, written or oral statement, or act which is material and false"). The government has given no indication that it intends to forgo these remedies. This case is not moot. *See F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 255 (2012) (finding no mootness largely because the agency had the authority to increase future penalties); *Hyosung TNS Inc. v. Int'l Trade Comm'n*, 926 F.3d 1353, 1358 (Fed. Cir. 2019) ("[A] case may remain alive based on collateral consequences, which may be found in the prospect that a judgment will affect future litigation or administrative action.") (internal quotation omitted).

We need not determine for purposes of this case what remedies Royal Brush may have to recover the assessed duties with respect to their two entries that were subject to antidumping duties upon liquidation since Royal Brush, in this case, has not sought such relief.

## II. Standard of Review

This Court applies the same standard of review as applied by the CIT in its review of the administrative record. *BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1300 (Fed. Cir. 2019). This requires this Court to determine "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2)(B).

## III. Due Process

We first address Royal Brush's contention that CBP's reliance on the redacted information in the information in the Attaché Report and Verification Report deprived it of due process under the Fifth Amendment of the Constitution. We have previously held that importers in antidumping proceedings are entitled to procedural due process.[5] The government agrees that importers in evasion proceedings enjoy rights to procedural due process.[6]

One "relatively immutable" principle of due process is that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the [g]overnment's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Greene v. McElroy*, 360 U.S. 474, 496 (1959). This immutable principle applies to cases where facts have been withheld from an entity during an administrative proceeding. *Id.* at 497 (gathering

---

[5] *See PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761–66 (Fed. Cir. 2012) ("The due process right to which [the importer] was entitled [in the antidumping proceeding] was the right to notice and a meaningful opportunity to be heard.") (internal quotations and citation omitted); *NEC Corp. v. United States*, 151 F.3d 1361, 1370 (Fed. Cir. 1998) ("NEC['s] claim[] that the determination of certain contested facts regarding the pending antidumping investigation against it was tainted by prejudgment . . . is a procedural due process claim of the kind generally cognizable under the Fifth Amendment of the Constitution.").

[6] The government concedes that Royal Brush has "a procedural due process right to notice and a meaningful opportunity to be heard," Gov't Br. 29 (internal quotations and citation omitted), and that this right to due process is "undisputed," *id.* at 37.

cases); *Ramirez v. Dep't of Homeland Sec.*, 975 F.3d 1342, 1349–53 (Fed. Cir. 2020); *Doty v. United States*, 53 F.3d 1244, 1251 (Fed. Cir. 1995) ("The agency's . . . withholding of the evidence on which [it] purported to rely . . . w[as] . . . egregiously removed from the fairness required of an agency in its administrative responsibilities . . . .").[7]

One particular example cited in *Greene, Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio*, 301 U.S. 292 (1937), is similar to this case. In *Ohio Bell*, the Public Utilities Commission set rates for Ohio Bell's services and directed Ohio Bell to issue refunds based on the rate calculations. 301 U.S. at 294–99. In so doing, the Public Utilities Commission relied on price trend information that was not provided to Ohio Bell. *Id.* at 297–301. The Supreme Court held that this was a violation of due process: "To fix

---

[7] *See also Stone v. F.D.I.C.*, 179 F.3d 1368, 1376 (Fed. Cir. 1999) ("Procedural due process guarantees are not met if the [party adverse to the agency action] has notice only of certain charges or portions of the evidence and the deciding official considers new and material information."); *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 319 (D.C. Cir. 2014) ("[D]ue process requires, at the least, that an affected party . . . be given access to the unclassified evidence on which the official actor relied and be afforded an opportunity to rebut that evidence."); *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995) ("[T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error."); *Sykes v. Apfel*, 228 F.3d 259, 273 (3d Cir. 2000); *Ralpho v. Bell*, 569 F.2d 607, 629 (D.C. Cir. 1977); Henry J. Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267, 1283 (1975) ("There can . . . be no fair dispute over the right to know the nature of the evidence on which the administrator relies.").

the value of these components [relied upon for the rate determination] the Commission had recourse to statistics which it collected for itself. There was no suitable opportunity through evidence and argument to challenge the result." *Id.* at 306 (internal quotations and citation omitted). The Court noted that "much that [agencies] do within the realm of administrative discretion is exempt from supervision if [constitutional] restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the inexorable safeguard of a fair and open hearing be maintained in its integrity." *Id.* at 304 (internal quotations and citation omitted). The rule of *Ohio Bell* and related cases can simply be seen as the outcome of the balancing test later articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

In short, the law is clear that, in adjudicative administrative proceedings, due process "includes the right to know what evidence is being used against one." *Robbins v. U.S. R.R. Ret. Bd.*, 594 F.2d 448, 452 (5th Cir. 1979). We are aware of no court holding that confidential business information is exempt from this constitutional requirement of disclosure to regulated parties in administrative proceedings brought against them.[8] The government cites

---

[8] This requirement may not apply in administrative proceedings that are deemed legislative in nature. In *Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294 (1933), a case not cited by the parties, a new duty rate was assessed on sodium nitrate, based largely on the production costs American manufacturers disclosed to the Tariff Commission. 288 U.S. at 297–298. "The information as to costs was subject to a pledge of secrecy; the manufacturers taking the position, to which the Commission acceded, that costs were trade secrets, to be withheld from competitors." *Id.* at 298. As such, the information was not disclosed to a party affected by the change in duties that

none.[9] There is no legitimate government interest here in refusing to provide confidential business information to

---

wished to challenge that change. *Id.* at 299, 303. The Court upheld the Commission's refusal to disclose because the agency was performing a legislative function. *Id.* at 305 ("What is done by the Tariff Commission and the President in changing the tariff rates to conform to new conditions is in substance a delegation, though a permissible one, of the legislative process."); *see also United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 245–46 (1973) (finding no constitutional right to oral argument in the agency proceeding where "[n]o effort was made to single out any particular railroad" and the proceedings were legislative in nature); *Gilda Indus., Inc. v. United States*, 446 F.3d 1271, 1274–75, 1284 (Fed. Cir. 2006) (finding that an importer had no right to procedural due process protections when challenging the inclusion of toasted breads on a retaliation list created by the United States Trade Representative to retaliate against a European ban on certain American meat imports). This is, of course, quite different from the present situation. We have held that the relatively analogous antidumping proceedings are "'relatively formal administrative procedure[s]' that adjudicate parties' rights." *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1381 (Fed. Cir. 2001) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 230 (2001)); *see also NEC Corp.*, 151 F.3d at 1370 (rejecting the argument that the assessment of antidumping duties on an individual importer was "a challenge to the [g]overnment's legislative power to regulate NEC's conduct in foreign commerce"). Evasion determinations are similarly adjudicative.

[9] The government notes that, in *Reno*, the court stated that "courts have allowed the Government to keep certain information confidential." 70 F.3d at 1070. However, "the exceptions to full disclosure are narrowly circumscribed," and involve, for instance, state secrets and

Royal Brush when all government concerns about the necessity of secrecy can be alleviated by issuing a protective order, as discussed below.

There is also no question here that CBP relied upon factual information not provided to Royal Brush to support its determination that Royal Brush was evading duties by transshipping Chinese pencils through the Philippines. In the Notice of Final Determination as Evasion, CBP stated:

> Based on entry information and CBP's calculations of Philippines Shipper's production capacity using data supplied by Philippines Shipper and information obtained at verification, CBP determined that total U.S. imports of pencils by all importers during 2018 that were identified with Philippines Shipper as manufacturer exceeded the company's annual production capacity by [] percent.

J.A. 105. CBP used that number to support its evasion determination by explaining that, based on its calculations, the Philippines manufacturer "must have been shipping large volumes of pencils to the United States from sources other than its own production facilities." J.A. 105–06. Before the Final Determination as to Evasion, Royal Brush did not have access to the data that led CBP to this conclusion. This was not remedied after remand from the CIT to CBP, as all CBP did was replace blank brackets with either "number" or "no."[10]

---

matters of national security. *Id.*; *see also Ralls Corp.*, 758 F.3d at 319 ("[D]ue process does not require disclosure of *classified* information supporting official action."); *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986).

[10] Royal Brush also argues that it was improperly denied access to other redacted information in the Verification report, such as photographs, "identifying information

CBP also relied on the redacted photographs in the CBP Attaché Report in its evasion determination. The Final Determination as to Evasion specifically mentions one such photograph in its recitation of "information on the record [that] supports the conclusion that" Royal Brush had engaged in transshipping. J.A. 106. The Administrative Determination on Appeal states that "[t]he CBP Attaché's report, complete with observations and photographs, unequivocally demonstrates repackaging of Chinese pencils into boxes labeled as made in the Philippines and destined for the United States." J.A. 94–95. The public summaries provided after remand provided no meaningful information. Descriptions such as "photo of box with labeled finished merchandise" and "photo of labeled boxes" did not provide Royal Brush with enough information to know what evidence was being used against it. J.A. 1378–79.

In sum, CBP relied on factual information that was not provided to Royal Brush to determine that Royal Brush had evaded duties. This, in and of itself, is a clear violation of due process.

The government nonetheless argues that confidential business information cannot not be disclosed absent a statute or regulation authorizing a protective order.[11] In this

---

about certain invoices and purchase order numbers," and "the identity of Manufacturer personnel whom the agency interviewed." Appellant's Br. at 22. However, Royal Brush makes no specific citations to where CBP relied on this information in its determination of evasion.

[11] In its Final Remand Determination, CBP determined:

> The EAPA statute and applicable regulations do not provide for a mechanism, such as an administrative protective order (APO), for disclosure of confidential business information to interested

respect, the government relies on the general language of the Trade Secrets Act, 18 U.S.C. § 1905, and cases supporting the proposition that agencies generally must be able to regulate the conduct of their own proceedings (e.g., *PSC VSMPO-Avisma Corp.*, 688 F.3d; *Cook v. United States*, 536 F.2d 365 (Ct. Cl. 1976)), none of which approves the refusal to provide confidential business information to an adverse party that the agency relied on in reaching its adjudicative decision. The Trade Secrets Act prohibits any government employee from disclosing trade secret information "to any extent not authorized by law." 18 U.S.C. § 1905.

We have no doubt that a release of information is "authorized by law" within the meaning of the Trade Secrets Act if that release is required as a matter of constitutional due process, as is the case here. The government does not dispute that confidential business information may properly be disclosed under the Trade Secrets Act where there is a provision for an authorized protective order,[12] but urges that neither the EAPA nor the regulations governing such proceedings contain such a provision. The government contends that "there is simply no legal basis on

---

> parties. As such, CBP is not authorized to disclose business confidential information to interested parties or their authorized representatives.

J.A. 36 (footnote omitted).

[12] *See Qwest Comms. Int'l Inc. v. F.C.C.*, 229 F.3d 1172, 1173–76 (D.C. Cir. 2000); *United States v. W.R. Grace*, 455 F. Supp. 2d 1140, 1148 (D. Mont. 2006); *Agility Public Warehousing Co. K.S.C. v. Dep't of Def.*, 110 F. Supp. 3d 215, 229 (D.D.C. 2015). The government concedes that "the absence of statutory authorization may not necessarily preclude agencies from promulgating a regulation to govern an [administrative protective order] procedure." Gov't Br. 31.

which Royal Brush can establish an entitlement through CBP to the Philippines Shipper's confidential business information" because "[n]either the EAPA statute nor CBP's regulations permits, let alone requires, CBP to release confidential business information to Royal Brush." Gov't Br. 34–35.

As best we can make out, the government's argument is that due process does not require public disclosure of confidential business information relied on in adjudication but only requires disclosure to affected parties under protective orders. Therefore, the government asserts, unless a protective order is authorized by law, disclosure is not authorized by law. In other words, the government can avoid compliance with due process requirements by the simple expedient of failing to provide for a protective order in a statute or regulation. We are aware of no case supporting any such extraordinary theory, and it is untenable on its face. The right to due process does not depend on whether statutes and regulations provide what is required by the constitution.

The government's concern with public disclosure of the confidential information is, in any event, unwarranted because we conclude that CBP has the inherent authority to utilize protective orders in appropriate circumstances. In other words, because the Constitution authorizes, and indeed requires, the release of confidential business information in this case, the Trade Secrets Act does not stand in the way of such release. And because CBP has the inherent authority to issue protective orders, confidential business information released to Royal Brush can be protected from public disclosure and there would be no risk that in narrowly releasing the information to Royal Brush CBP would compromise the trade secrets.

To be sure, release of confidential business information is generally governed and protected by statutes or regulations that provide for protective orders. For example, in

proceedings determining whether antidumping and countervailing duties should be imposed, 19 U.S.C. § 1677f(c)(1)(A) requires the agency to, upon request, "make all business proprietary information presented to, or obtained by it, during a proceeding [with certain exceptions] available to interested parties who are parties to the proceeding under a protective order." But it is well established that courts have the inherent authority to adopt procedures to manage their own affairs. *See Dietz v. Bouldin*, 579 U.S. 40, 45 (2016); *Gumbel v. Pitkin*, 124 U.S. 131 (1888). So do administrative agencies. "Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) (internal quotations and citations omitted). The leading administrative law treatise recognizes that "[t]he administrative judge generally has the authority to fashion protective orders." 2 Admin. L. & Prac. § 5:40 (3d ed. 2023).

The EAPA statute and associated regulations do not bar protective orders. While the statute concerning assessing antidumping and countervailing duties includes a specific provision authorizing protective orders, 19 U.S.C. § 1677f(c)(1)(A), and a similar provision was incorporated in the original House bill that would later become the EAPA but left out of the final legislation,[13] there is no

---

[13] The earlier version of the bill stated: "For each investigation initiated . . . the Commissioner shall establish procedures for the submission of business proprietary information under an administrative protective order." H.R. 3057, 112th Cong. § 101(a) (2011). The protective order provision was explicitly mentioned in a House Report explaining how Commerce, the agency then proposed to have

indication that Congress objected to protective orders. Nor does the history of the EAPA regulation suggest such that protective orders are unauthorized or undesirable.[14] The government offers no reason that the use of protective orders would impair the function of the EAPA process. Given the well-established practice of utilizing protective orders in litigation[15] and the absence of any statutory or

---

authority over evasion determinations, would implement the EAPA. *See* H.R. REP. NO. 114-114, pt. 1, at 86 (2015) ("Authorized representatives of interested parties can obtain access to business proprietary information through an administrative protective order."). There is no indication as to why this provision did not make it into the final version of the statute.

[14] The notice of rulemaking promulgated to implement the EAPA mentioned protective orders only to say that

> as there is no administrative protective order (APO) process provided for in the EAPA, parties involved in an EAPA proceeding are advised not to submit information to CBP that they obtained exclusively under a protective order from another agency, court, or proceeding unless the scope of that protective order explicitly covers the EAPA investigation or proceeding under consideration. Accordingly, parties are advised to exercise caution when submitting information to CBP in an EAPA proceeding.

81 Fed. Reg. 56,477, 56,479 (Aug. 22, 2016). This statement was made in the subsection discussing submission of material to CBP.

[15] We note that the CIT rules themselves provide for such orders. *See* U.S. Ct. Int'l Trade R. 26(c) ("The court may, for good cause, issue an order to protect a party or person . . . requiring that a trade secret or other

regulatory prohibition of such orders, we have no doubt that CBP has inherent authority to provide protective orders in EAPA proceedings before the agency.

Finally, the government argues that "Royal Brush . . . fails to show that lack of access to [confidential business] information has caused it prejudice." Gov't Br. 41. However, when a due process violation has occurred because of a denial of access to new and material information upon which an agency relied, no additional showing of prejudice is required. *See Stone v. F.D.I.C.*, 179 F.3d 1368, 1377 (Fed. Cir. 1999) ("[W]hen a procedural due process violation has occurred because of ex parte communications, such a violation is not subject to the harmless error test."); *see also Ramirez*, 975 F.3d at 1352–53. This is not a situation in which the evidence "played a negligible role" in the agency's final decision. *See Tennessee Secondary School Athletic Ass'n v. Brentwood Academy,* 551 U.S. 291, 303 n.4 (2007). In any event, on its face, the denial of access to the redacted information here was prejudicial because it denied access to information on which the agency relied in reaching its decision.

There is no basis for CBP to violate Royal Brush's due process rights by failing to provide the information on which it relied to Royal Brush.

## IV. Rebuttal

We turn to the issue of Royal Brush's right to rebuttal. As *Greene* and other cases cited earlier make clear, the right to rebut has constitutional dimensions. *See, e.g.*, *Greene*, 360 U.S. at 496; *Ralls Corp.*, 758 F.3d at 319; *see also Ward v. U.S.* Postal *Serv.*, 634 F.3d 1274, 1279 (Fed.

---

confidential research, development, or commercial information not be revealed or be revealed only in a specified way."). The CIT thus has the general authority to issue protective orders, including in EAPA cases. *See supra.*

Cir. 2011) (requiring an "opportunity to respond" where a "deciding official received new and material information by means of ex parte communications") (internal quotations and citations omitted). But here the regulations themselves also provide that right. 19 C.F.R. § 165.23(c)(1) states: "If CBP places new factual information on the administrative record [in an evasion determination] on or after the 200th calendar day after the initiation of the investigation . . . , the parties to the investigation will have ten calendar days to provide rebuttal information to the new factual information." In accordance with our decision today, Royal Brush will be provided access to the numerical data used to calculate the production capacity and the relevant photographs, and this information will be placed in the administrative record subject to an appropriate protective order. We need not reach the constitutional question of a right to rebuttal because we conclude that the regulations themselves provide the right to rebut because CBP relied on new factual information.

The government's theory is that the rebuttal regulation is inapplicable because the Verification Report relies on only previously provided data. There is no question that this numerical data is new factual information that, by regulation, Royal Brush is entitled to rebut. The Verification Report did not simply rely on data provided previously. CBP's own description of the verification process in the Administrative Determination on Appeal demonstrates that new information was provided in the Verification Report: "[t]he purpose for the CBP [verification visit] was to determine whether the Philippine supplier could show that it was capable of producing the amount of pencils allegedly manufactured for Royal Brush." J.A. 95. This is further demonstrated by CBP's statements in the Final Determination as to Evasion: "Based on entry information and CBP's calculations of Philippines Shipper's production capacity using data supplied by Philippines Shipper *and information obtained at verification*, CBP determined that

total U.S. imports of pencils by all importers during 2018 that were identified with Philippines Shipper as manufacturer exceeded the company's annual production capacity by [redacted] percent." J.A. 105 (emphasis added).

## CONCLUSION

We remand this case to the CIT with instructions to remand to CBP.[16] On remand, CBP must provide Royal Brush with the aforementioned redacted information and give it an opportunity for rebuttal.

## **VACATED AND REMANDED**

## COSTS

Costs to Appellant.

---

[16] Royal Brush also argues that CBP's evasion determination was arbitrary and capricious and not supported by substantial evidence. Because the case is being remanded for further consideration in light of this opinion, we need not decide whether CBP's actions were arbitrary and capricious at this time.